## Lawrence v. Wheeler.

Jan. 28, 1941.

Speight & Wiggins for appellant.

J. E. Warren and F. B. Martin for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, who was plaintiff below, brought this action against appellee to recover a certain small parcel of land located in Graves County, Kentucky. The determinative question involved is an alleged agreed line established by A. D. Wheeler and B. C. Henley at the time they purchased of M. J. Andrus a certain parcel of land in 1910. Appellant is a remote vendee of B. C. Henley, and the question presented is whether the location of a stake placed by A. D. Wheeler and B. C. Henley, or the quarter section (township) line designated in the Andrus deed is the correct line between the lands of appellant and appellee.

There were several conveyances made between the time A. D. Wheeler and B. C. Henley purchased the land of Andrus and the purchase by appellant of the parcel of land in question, whose source of title goes back to the Andrus deed and, as indicated above, the corner established at the time appellant's predecessor in title, B. C. Henley, purchased the land of Andrus, is the key point throughout the chain of title here involved. The background facts and history of the various conveyances bearing upon the location of the corner line in question, are these:

In November, 1910, and prior thereto, M. J. Andrus owned a large tract of land in Graves County, Kentucky, which was bounded on the west by the land of A. D. Wheeler, father of appellee, Jap Wheeler. The line between the Andrus and Wheeler land ran directly north and south. The Mayfield-Paris highway, running a southeasterly and northwesterly direction, cut across the northeast corner of the Wheeler land and crossed the line between the Andrus and Wheeler land, entering the Andrus land and extending on in a southeasterly direction, thereby cutting off a triangular section of about five acres of the Andrus land, mostly in the southwest corner.

On November 23, 1910, M. J. Andrus sold the triangular tract of land lying between the Mayfield-Paris highway and the Wheeler land to A. D. Wheeler and B. C. Henley for an agreed consideration, and made them separate deeds conveying to Wheeler 1⅛ acres on the northern end of the triangle, and to Henley the remaining 3¾ acres, the line separating the two parcels running directly east and west.

The 3¾ acres conveyed by Andrus to B. C. Henley is thus described:

"Beginning at a stake about 38 rods on the Qr. Sec. line between the S. E. and S. W. Qrs. of Sec. 34, T. 2, R. 2, E. Being a stake established by the said Henley and A. D. Wheeler of the lands this day bought of said Andrus by said above named parties; thence south about 40 rods to a stake on Qr. Sec. line; thence in a north easterly direction about 19½ rods to the Paris and Mayfield road; thence with road north to a stake this day established by the said Henley and A. D. Wheeler; thence west about 8½ rods to the beginning, containing about 3¾ acres, more or less."

The location of the southwest corner point of the 1⅛ acre Wheeler tract, and the northwest corner of the 3¾ acre Henley tract, is the decisive point in this case. It is the contention of appellee that the stake mentioned in the beginning of the description was or should have been on the quarter section line, as indicated in the description; it is the contention of appellant that the stake was placed a few feet west of the quarter section line at a wire fence extending north and south and parallel

to the quarter section line, leaving a strip of land a few feet wide between the wire fence and the quarter section line, which constitutes the land here in dispute; or, stated differently, the question is whether the quarter section line constitutes the western boundary line of the land of appellant, or whether it extends a few feet west of the quarter section line to the wire fence.

In 1916 B. C. Henley sold one acre off the northern end of the 3¾ acre tract described above, to L. H. Henley, but this deed does not mention the stake above referred to. The description begins at a stake near the Mayfield-Paris road on the southeast corner of the one acre tract and "thence west 20 rods, more or less; thence north about 6 roads; thence east 20 rods, more or less; thence south to the beginning. Being a part of the same land deeded to B. C. Henley by M. J. Andrus, deed dated Nov. 23, 1910, * * *".

After B. C. Henley sold to Lester Henley the one acre off the 3¾ acres there was left 2¾ acres of the original 3¾ acres deeded by Andrus to B. C. Henley. B. C. Henley died and his son, L. H. Henley, inherited the 2¾ acre tract. In July, 1921, L. H. Henley sold these 2¾ acres to J. H. Wheeler, a son of A. D. Wheeler, and the description contained in this deed, so far as is pertinent, reads:

"Beginning at a stake about 38 rods on Qr. Sec. line between the S. E. and S. W. Qrs. of Sec. 34, T. 2, R. 2 E. being a stake established between Henley and A. B. Wheeler, * * *".

In July, 1925, J. H. Wheeler reconveyed the above mentioned 2¾ acres to Lester or L. H. Henley, and the description in this deed, so far as is pertinent, reads:

"Beginning at a stake about 38 rods on quarter section line between the S. E. and S. W. corners, Sec. 34, T. 2, R. 2 E. being a stake established between Henley and Wheeler; * * *".

It appears that the beginning corner in this deed is the original corner or "stake" referred to in the 1910 deed from Andrus to A. D. Wheeler.

In November, 1927, L. H. Henley sold the 2¾ acres of land to Harry Burton and in the description in this deed the stake in question is referred to as being "on

the quarter section line" and also "established between Henley and A. D. Wheeler," apparently the same beginning point established by the Andrus deed in 1910.

On June 11, 1929, Harry Burton sold to the appellant, H. C. Lawrence, one acre off of the north end of the 2¾ acre tract and in that deed the stake in question is not specifically mentioned, but reference is made to the description in the deed from Henley to Burton which calls for a stake on the quarter section line.

The action was brought in ejectment but by agreement of the parties it was transferred to equity and the evidence heard in open court. The stake in question has long since been removed, but it is claimed that there is a hole in the ground at the wire fence a few feet west of the quarter section line, where a post had been set at the point where the stake was set at the time Andrus deeded the land to A. D. Wheeler and B. C. Henley. Appellant testified that when he bought the land of Burton he talked to Burton and several others and they showed him a hole and said that was the corner and it was "right up against that wire fence in the edge of the woods in the northwest corner." Burton's evidence is in substance the same as that of the appellant in regard to the location of the hole. Also, the evidence of Harvey Wheeler, a son of A. D. Wheeler and brother of appellee, Jap Wheeler, is favorable to appellant on the same question and the evidence of several other witnesses is of like import.

Without giving a detailed resume of the testimony of the various witnesses, it is sufficient to say that the preponderance of evidence tends to show that the stake set by A. D. Wheeler and B. C. Henley at the time they purchased the land of Andrus, was set near the wire fence a few feet west of the quarter section line. It must not be forgotten, however, that the point agreed on by Wheeler and Henley is not conclusive that Andrus conveyed to B. C. Henley any land west of the quarter section line. The Andrus deed calls for a stake *on the quarter section line,* therefore, the deed conveyed no land west of that line, although Wheeler and Henley may have placed a stake at some other point. However, there is considerable evidence to the effect that the wire fence had long been considered and recognized as the

dividing line between the A. D. Wheeler and Andrus lands, except it is not shown that Wheeler or Andrus ever claimed or recognized this fence as the line. On the other hand, it is shown by a number of witnesses who had lived on the Andrus land and whose father occupied it as Andrus' tenant for more than forty years, that they never heard of any disagreement between Andrus and Wheeler or of any claim of any line between them except the quarter section line.

In brief of appellant, counsel places great stress on the language ''a stake established by Wheeler and Henley,'' but he overlooks or fails to recognize the solemn statement in the deed in referring to the same stake, that the stake was *on the quarter section line,* thence running south to a stake on the quarter section line, indicating that the line began at the stake on the quarter section line and ran south with that line. Since the wire fence was only a few feet from the quarter section line, it may be that Wheeler and Henley took it for granted that the fence was the line and placed the stake there, but when Andrus made the deed he conveyed the land to the quarter section line only. It will be observed that the description contained in all the deeds, from the Andrus deed in 1910 down to and including appellant's deed in 1929, recite that the stake in question established by Wheeler and Henley, was on the quarter section line. There is some question raised by appellant as to the proper location of the quarter section line, but the weight of the evidence tends to show that the quarter section line is east of the wire fence line claimed by appellant.

From the evidence adduced and the chancellor's personal observations made by going upon the premises he found in favor of appellee and judgment was entered accordingly. In the memorandum opinion prepared by the chancellor and filed with the record, the chancellor said, in part:

''In an endeavor to get all the information I could relative to this controversy, I went upon the ground myself, starting at the Orr corner and sighting and following the quarter section line as best I could, I saw the two rocks mentioned in the evidence, also the hacked trees. From the evidence and personal observation, I am forced to conclude

that the rocks and the hacked trees truthfully indicate and represent the location of the *Quarter Section Line,* which seemed to have been observed as the line between these tracts by all the deeds and conveyances made in the different transfers where the quarter section line was involved.

"It is contended by the plaintiff that A. B. Wheeler and Henley established the line between the property of Lawrence and Wheeler and that this corner, which the proof discloses is in the nature of a post hole is the true line and should be followed in respect to this property.

"It is the court's idea that the agreed line and points made by Henley and Wheeler had reference alone to the line between the 1⅛ acre tract and the 2¾ acre tract, and has no reference to the line between Lawrence and Wheeler, but simply an agreed line between these two small tracts, and was not intended to locate the west line of the Lawrence tract or the east line of the Wheeler tract.

"It therefore appears to me that the fence erected by Wheeler (meaning, appellee Jap Wheeler, who enclosed by fence the strip of land between the wire fence and the quarter section line in 1938, which started this controversy) is on the Quarter Section Line, and that the quarter section line is the west boundary of the Lawrence acre and the east boundary of the Wheeler land, and the strip in question lies west of said line and is therefore the property of Wheeler." (Our parenthesis.)

The chancellor's finding that the agreed line and points made by B. C. Henley and A. D. Wheeler had reference alone to the east and west line between the 1⅛ acre tract conveyed to Wheeler and the southern portion of the tract conveyed to Henley is more or less plausible. In that deed the starting point is the stake on the quarter section line established by A. D. Wheeler and B. C. Henley, and runs south to a stake on the same line, thence east to the Mayfield-Paris road, thence north to another stake established by Wheeler and Henley, (this stake not being in question) then straight west to the beginning. But conceding, without deciding, that the chancellor was in error in that respect, yet the evidence on the other phase of the case is sufficient to sup-

port the judgment, and it is not material that the chancellor may have based his conclusion on an erroneous theory. This rule is fundamental and too well known to the legal profession to require citation of authority.

For the reasons stated the judgment is affirmed.