## Talbott, Com'r of Finance, v. Public Service Commission et al.

Feb. 24, 1942.

Rehearing Denied June 19, 1942.

110

Hubert Meredith, Attorney General, for appellant.

L. W. Morris, J. J. Leary, Marion Rider, Smith & Leary and J. Donald Dinning for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming in part and reversing in part.

The case involves construction of Section 246 of the Constitution which declares:

"No public officer, except the governor, shall receive more than five thousand dollars ($5,000.00) per annum as compensation for official services, independent of the compensation of legally authorized deputies and assistants, which shall be fixed and provided for by law. The general assembly shall provide for the enforcement of this section by suitable penalties, one of which shall be forfeiture of office by any person violating its provisions."

We are asked to determine whether the section applies to (1) the president and professors of the University of Kentucky and the Teachers' Colleges; (2) the attorneys engaged by the Commissioner of Revenue under the provisions of Sections 4257a-1 to 4257a-7, inclusive, Ky. Stats., Supp. 1939, to perform legal services incident to the exercise of the authority by those sections conferred upon the commissioner to institute proceedings for the collection of delinquent taxes and the assessment of omitted property for the Commonwealth and certain of its municipalities; (3) the technical adviser and consultant engaged by the Public Service Commission of Kentucky in its investigation of the property of the utilities companies operating within the Commonwealth.

The court below thought, as appellees argue, that Section 246 of the Constitution is applicable solely to officers of the state as the word has been defined by this court in the following cases, City of Lexington v. Thompson, 250 Ky. 96, 61 S. W. (2d) 1092, Alvey v. Brigham, 286 Ky. 610, 150 S. W. (2d) 935, 135 A. L. R. 1024, City of Louisville v. Thomas, 257 Ky. 540, 78 S. W. (2d) 767, and City of Louisville v. German, 286 Ky. 477, 150 S. W.

(2d) 931; that none of appellees was an officer, on the contrary each was a subordinate employee of the state, therefore the Constitution did not limit the amount of salary he should receive. But we think this construction to be too narrow. It is unnecessary for us to reiterate in detail the characteristics of an officer in contradistinction to those of an employee since that has been clearly done in the opinions hereinbefore cited. All of these opinions point to the irrefutable fact that the duties performed by an officer carry more responsibility, and presumably require more ability in their proper performance, than do the duties of a mere employee engaged in the same field of endeavor. It seems to us to be inconceivable that the members of the constitutional convention would feel impressed with the obligation to limit salaries of those engaged in the performance of duties of grave responsibility, and, at the same time, permit persons in positions subordinate in authority and responsibility to receive unlimited compensation. To attribute to them such intention would be to charge them with a total absence of appreciation or sense of values and would amount to an accusation that they proceeded on an absurd hypothesis. Such interpretation would be to hold that the Constitution forbids officers, upon whom rests the responsibility of approving the expenditure of millions of dollars a year, from receiving as much salary as may be paid to mere messenger boys in the departments such officers direct. That such construction would result in an absurdity does not require reflection, it is apparent on its face. We therefore conclude that Section 246 of the Constitution is not limited in its application to that class of employees of the state who are technically known as officers, but that common sense dictates that the word ''officers'' must be construed to include, by inference, employees subordinate thereto. This interpretation is not at war with any decisions heretofore rendered by this court. While in the cases above cited, the individuals involved attempted to circumvent the provisions of Section 246 upon the same ground herein urged by appellees, it was not necessary in either of the cases for the court to, and it did not, determine whether mere employees of the state came under the purview of the section. That question was eliminated when it was determined that the litigant was in fact an officer of the state. So far as we have been able to determine, this is the first time an employee of the state holding a position sub-

ordinate to that of an officer has tested the scope of Section 246.

There can be no question that the purpose of the section was to safeguard taxpayers from being required to pay public servants salaries, which, under the standards prevailing at the time of the adoption of the Constitution, were considered to be exorbitant. That purpose would be thwarted by the interpretation we are asked to place on the phraseology contained in the section; the public treasury would not be protected by limiting the salaries paid to the few officers of the state unless the salaries of the many employees were likewise limited. It was not the purpose of the framers of the Constitution, in enacting that section, to place officers in a different category from subordinate employees. If there were any doubt as to the intent in this respect, it would be dissipated by reading the debates of the constitutional convention. Neither the first three Constitutions nor the original draft of the fourth Constitution, as presented to the convention of 1890-1891, contained a provision limiting salaries. Section 246 was offered as an amendment, and, in its original form, fixed the maximum salary at $6,000. It was then amended to read $5,000. Thereafter an amendment limiting the salary of the Governor to $6,000 was offered but rejected. In the debate on this amendment it developed that the Governor of the state at that time was receiving $5,000 per annum, in addition to the privilege of occupying the mansion. It was declared without contradiction that he then was receiving more compensation than that paid the chief executive of any other state in the union. The salary was referred to as "munificent," even taking into consideration the cost of official entertaining, which was borne by the chief executive. The amendment to fix the salary of the Governor was defeated by only five votes. It cannot be said, in reason, with the vote so close on placing a limitation on the salary of the Governor, that it was the intention of the legislature to exempt from the burden of limitation the salary of a subordinate employee.

Although as we have seen the section applies to employees as well as officers, it does not follow that it applies to every person rendering services to the Commonwealth. It must be conceded that the latter may engage the services of individuals, firms, and corporations in such capacities as will leave them free to perform the de-

tails of their engagements according to their own designs and methods, and independent of the authority of the state, except as to the results to be obtained. Persons engaged in such capacities are neither officers nor employees of the state; they differ therefrom in that the detail of their work is prescribed neither by law nor by a superior in authority. The services they render in return for the compensation paid are neither continuous nor regular, nor are they in performance of requirements of a permanent nature, as is usually the case when performed by employees. Persons rendering such services are known to the law as independent contractors. Roberts v. Commissioner of Internal Revenue, 5 Cir., 44 F. (2d) 168; Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; H. H. Miller Construction Co. v. Collins, 269 Ky. 670, 108 S. W. (2d) 663, 665; La Rochelle v. Commissioner of Internal Revenue, 7 Cir., 115 F. (2d) 878. The amount of compensation paid them and the methods and intervals of payment are fixed by contract, not by law or decree of the master. The contract determines the period in which the services are to be rendered, and, as a general rule, full compensation under the contract does not become due until after the results of the work have been obtained. It is through the engagement of this character of service that some, if not most of the more important public improvements are made, and it is patent that the compensation due such contractors does not come within the purview of Section 246 of the Constitution. Otherwise it would be impossible for the state to construct its roads, bridges, or public buildings, by awarding work upon bids submitted in accordance with statutory requirements, which has been the practice for so long that its legality may not be questioned. Whether the relationship of the person furnishing services to the state is that of employee or that of independent contractor is sometimes difficult to determine and necessitates the application of general rules to the particular facts of the individual case. American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115. In recognition of the distinction between employee and independent contractor, we believe the following rule should be adopted as a criterion by which to determine whether a person serving the state comes within the purview of Section 246. The section embraces one who, at regular intervals, is entitled to receive fixed compensation by virtue of his election, appointment, or em-

ployment in continuous public service, regularly pre-scribed by law or by mandate of his superior; and who is responsible to his superior in respect to the means and methods employed in his work as well as the results ob-tained thereby. With these precepts in mind we must look to the duties of the individuals involved in this liti-gation to determine whether the compensation they may legally receive is limited by the constitutional provision recited above.

H. L. Donovan is president of the University of Kentucky and James H. Richmond is president of the Murray State Teachers' College. Jesse E. Adams, Paul P. Boyd, J. S. Chambers, A.. E. Evans, W. D. Funk-houser, Robert D. Haun, T. T. Jones, James W. Martin, William S. Taylor, and Edward Wiest are professors or teachers of the University of Kentucky. The president and teachers of the University of Kentucky are serving under appointment of the Board of Trustees of the Uni-versity which by statute is given the power to determine the subjects to be taught; to devise the means required for instruction and admission; to appoint professors to the staff of the University; to determine and fix their salaries, duties, and official relations, and to suspend or remove them at will. James H. Richmond holds his posi-tion by appointment of the Board of Regents of the Mur-ray State Teachers' College, which has the same author-ity in respect to the personnel employed by it as does the Board of Trustees of the University in respect to the personnel employed by it. It is agreed that none of the appointees of the Board of Trustees or Board of Regents occupy an office created by the legislature or Constitu-tion; the legislature has not attempted to define their duties; it has not conferred upon them any power, nor has it delegated to them any portion of sovereign power of government; it has not fixed any term for the posi-tions they occupy; no official oath or bond is required of them; the respective boards have full force and free dis-cretion in determining the subjects and the number thereof to be taught in their respective institutions, and in selecting the teachers best qualified to teach the sub-jects, and its discretion in these particulars is not limited by constitutional or statutory qualifications. To staff the University and Teachers' College it is necessary for the boards to procure trained experts and experienced educators. Each professor is holding his appointment under an oral contract which provides that he shall per-

form such services as the Board of Trustees or Regents shall direct; the duties assigned to him can be changed at the will of the board; his salary can be reduced or otherwise changed at the will of the board; his term of employment may be terminated at the will of the board; and in all other respects and at all times he is subject to the control of the board. It is further shown that their relationships are governed exclusively by their contracts; that the powers and duties of their respective positions are defined and created only by the board; and, in the performance of their respective duties, they are circumscribed by directions and orders from the board. Applying the facts to the rule hereinabove set out, we find that by virtue of his employment each is entitled to receive fixed compensation at regular intervals; his employment is continuous; it is in the service of the public; his duties are regularly prescribed by mandate of his superiors; and, to whom he is responsible, both as to the means and methods employed in his work and as to the results obtained thereby. That being true, we are constrained to hold that the president and professors of the University and Teacher's College are employees of the state and are embraced by the provisions of Section 246 of the Constitution.

We will next consider the relationship of the attorneys employed by the Commissioner of Revenue in the collection of delinquent taxes and assessment of omitted property. Under their contract they are to receive an amount equal to one half of the penalties imposed on the delinquents against whom it is necessary to institute suit to recover delinquent taxes or to cause omitted property to be assessed. Out of this commission the attorneys must pay all persons assisting them in the work, as well as all other expenses incident thereto. The contract provides that they shall have exclusive right to represent the Department of Revenue and Commissioner of Revenue in all proceedings brought under the provisions of Section 4257a-1 to 4257a-7 of the Statutes, but no suit may be brought against any taxpayer or against any property unless specifically authorized and directed in writing by the Commissioner of Revenue. No compensation shall be received by these attorneys unless collections are first obtained, and, although it probably has no bearing on the case, the compensation which they receive is from a penalty which would not be authorized to be collected except upon institution of a suit; in other words, they are not

paid from the general fund of the Commonwealth. Thus, each suit instituted under the provisions of the Statutes, supra, and the contract in pursuance thereof, actually becomes a separate contract for which compensation is paid, and, although the general contract may be terminated on 60 days' notice, the right of the attorney to continue with any proceeding theretofore instituted may not be terminated until the work thereunder shall have been completed. The means or methods of their work are not subject to direction of the Commissioner of Revenue or any other official of the state, nor is it prescribed by statute. There is no guarantee that the Commissioner of Revenue will permit them to file suit against any taxpayer; the only guarantee of the contract is that if suit is instituted they will be designated as attorneys. They are free to engage as any other attorney, in work other than that prescribed by the contract; and, in their work under the contract, they are responsible to the state only as to the results obtained. If successful, their compensation becomes due, if unsuccessful, they receive no compensation for their work. Their services under the contract are neither regular, nor continuous. The only attribute of an employee which they possess is one which is likewise common to an independent contractor, viz., they receive fixed compensation. We see no distinction in the relationship of the attorneys in this case and those in Gordon, Huffaker & Garnett v. Morrow, 186 Ky. 713, 218 S. W. 258, and Roberts v. Commissioner of Internal Revenue, supra. It is therefore apparent that appellees, Smith, Leary, Rosenstein, and Reed are neither officers nor employees of the state within the purview of Section 246 of the Constitution; and while we do not agree with the reasons given by the chancellor, his decision is correct and will not be disturbed because arrived at erroneously. Lawrence v. Wheeler, 285 Ky. 288, 147 S. W. (2d) 698.

Appellee, Hugh B. Bearden, is a technical adviser and consultant engaged by the Public Service Commission to study and investigate various properties of Public Utility Companies, and to make recommendations to the committee in respect to the rates and regulations to be adopted by it. While it is alleged in the pleadings that he is an employee and subject to the direction and control of the commission in the methods to be employed by him in his work, his contract is filed as a part of the petition and shows in fact that he is not under their con-

trol or direction in that respect. He is employed because of his peculiar knowledge of methods and means of ascertaining data for use by the commission in establishing rates and regulations. The clause setting out his duties is in the following language:

"The Consultant shall render service to the Commission in the capacity of Technical Adviser and Consultant in matters relating to the determination of original cost, field inventories and appraisals of the plants and properties of utility companies operating in Kentucky, continuous property records, general utility engineering and accounting practices and procedures, and in such other utility regulatory problems as the Consultant may be by the Commission directed."

The contract shows that the commission is not sufficiently familiar with the means and methods employed by its technical adviser to direct him in any detail of his work. It is apparent from the contract that he is responsible only for the results of his work. He is paid a fixed compensation; he is required to work as many as 156 days a year but cannot be paid for more than 240 days a year. His contract is for a period of time commencing July 1, 1941, and ending June 30, 1942. The only attribute of an employee that he definitely possesses is that he receives a fixed compensation which attribute is likewise common to independent contractors. Although it may be argued that his work is prescribed by his superiors, certainly, he is not responsible to his superiors in respect to the means and methods employed by him in his work and which is essential to the relationship of employer and employee. We see no distinction in Bearden's relationship to the state and appellants in the case of Metcalf & Eddy v. Mitchell, supra [269 U. S. 514, 46 S. Ct. 173, 70 L. Ed. 384], who were consulting engineers employed to advise various states with reference to water supply and sewage disposal systems. They claimed exemption from income tax by reason of being officers or employees of the state by whom they were engaged. After disposing of the contention that they were officers, it was said:

"Nor do the facts stated in the bill of exceptions establish that the plaintiffs were 'employees' within the meaning of the statute. So far as appears, they were in the position of independent contractors.

The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor.''

We therefore conclude that appellee, Bearden, does not come within the purview of Section 246.

Wherefore the judgment as to Smith, Leary, Rosenstein, Reed, and Bearden, is affirmed; but as to the other appellees it is reversed with directions to set it aside and enter another in conformity with the views herein expressed.

Whole Court sitting, except Judge Cammack.

Judge Rees, dissenting.

I dissent from so much of the opinion as holds that the limitations of Section 246 of the Constitution apply to mere employees. The president and professors of the University of Kentucky and other state supported schools are not officers within the meaning of the section, and its limitations should not be applied to them. The subject matter of Section 246 is primarily a function of legislation, and the section should not be given such a narrow or strained construction as will prevent the Legislature from meeting responsibilities occasioned by changing conditions of society so far as that is possible within the limitations expressly imposed. Today states and their subdivisions engage in manifold activities of which the most far-sighted statesmen of fifty years ago had not the slightest conception. Many of these activities, though proper and necessary under modern conditions, are far removed from what were deemed governmental functions and ''official duties'' when our Constitution was adopted. Surely the framers of the Constitution never contemplated that the provisions of Section 246 should apply to persons employed by the state or its subdivisions to render services of an unusual or highly technical nature requiring special training and prepara-

tion. When they referred to "public officers" and "official duties" they did not have in mind school teachers, librarians, accountants, architects, engineers, and others skilled in the professions. They intended the section to apply to public officers performing the customary executive, legislative, and judicial functions of government. So long as the section remains in the Constitution it should be strictly enforced, but it should be confined to public officers performing official duties and we should not declare at this late day for the first time that it was intended to include employees. In construing a constitutional provision courts are limited to the language used and are controlled by what the framers of the instrument said and not by what they might have meant to say. Where a constitutional provision is free from all ambiguity there is no room for interpretation or addition. It must be accepted by the courts as it reads. If the framers of our Constitution had any thought that mere employees should be affected by the limitations in Section 246, nothing would have been simpler than so to phrase the section as to exclude implication or speculation. I think Section 246 should be construed to mean exactly what it says, and should not be extended beyond the clear implication of the language employed.