## Pardue et al. v. Miller, Commissioner of Finance.

November 21, 1947.

Wm. B. Ardery, Judge.

Charles I. Dawson for appellants.

Eldon S. Dummit, Attorney General, and J. L. Hughett, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The judgment declares that the University of Kentucky cannot legally pay the appellant, Louis Arthur Pardue, more than $5,000 a year salary as a professor of science. It is in accord with Talbott, Commissioner of Finance, v. Public Service Commission of Kentucky, 291 Ky. 109, 163 S. W. 2d 33.

This suit, manifestly, is to obtain a review by this court of its decision, rendered five years ago, as it relates to the particular claim and construction of Section 246 of the Constitution. It is in part quoted for ready reference:

"No public officer, except the Governor, shall receive more than five thousand dollars per annum, as compensation for official services, independent of the compensation of legally authorized deputies and assistants, which shall be fixed and provided for by law."

Our opinion was that the presidents and professors of the University and the Teachers Colleges are employes and not public officers of the state, although at first blush it would appear that one holding a place so exalted and responsible is an officer. Our classification is in accord with the decisions of other courts. Thus, in Martin v. Smith, 239 Wis. 214, 1 N. W. 2d 163, 140 A. L. R. 1063, it was held in a well reasoned opinion that the president of the University of Wisconsin is not a public officer of the state within the meaning of the section of the Constitution of Wisconsin providing that no person holding any office of profit or trust under the United States should be eligible to any office of trust, profit or honor in Wisconsin; therefore, his acceptance of an office of profit and trust under the United States for war service did not make him ineligible to hold the position of president of the University. In enumerating the characteristic elements of public office, the court noted, among other things, that the president of the University did not exercise any part of the sovereign power of the state, but that, instead, such power was exercised by the university's board of regents, the president merely having power to manage and direct the university and carry out its policies and duties as set forth by the board of regents, such authority as the president had being subject in all things to the board of regents.

This uniform classification is based upon the proposition stated by Chief Justice Marshall, in United States v. Maurice, Fed. Cas. No. 15747, 2 Brock. 96: "Although an office is 'an employment' it does not follow that every employment is an office." Quoting this, it is said in a note, 83 A. L. R. 595:

"This distinction, from which it logically follows that the difference between the two terms consists of attributes which are annexed to an office, but which are not annexed to an employment, has been adopted and reaffirmed in subsequent decisions."

See Bernard v. Humble, 298 Ky. 74, 182 S. W. 2d 24; Black v. Sutton, 301 Ky. 247, 191 S. W. 2d 407.

In order to reach the conclusion of the former opinion, that the constitutional limitation was not restricted to the compensation of public officers but included public employes, it was necessary to extend it by implication. The court thought it was inconceivable that the members of the Constitutional Convention intended to place a limitation upon the compensation of officers, on whom rest the greater responsibilities, and not upon subordinates. The able members did not visualize the enormous change in economic conditions. They could not anticipate the present worth of technical, professional and administrative services, or the competition for such services not only with private industry but with public institutions outside Kentucky. They did not foresee that one holding other than an office of the highest degree or class would under future standards of value and compensation demand or deserve more than $5,000 per year. At that time the only officer being paid $5,000 (referred to as "munificent" in the Debates) was the Governor of the Commonwealth; and he was required out of that to pay for all his public entertainment. The Judges of the Court of Appeals were being paid $4,000 a year, Circuit Judges $3,000 (lately raised from $2400) and the Secretary of State $1500 a year. These are typical. See General Statutes of 1884. Chapter 95. Nor could the vast increase in state revenues and expanding governmental functions have been anticipated. In his able brief for the appellee, the Commissioner of Finance, the Attorney General says:

"At that time the total receipts from all sources of revenue in Kentucky was only $3,709,819.41. See Report of Fiscal Year Ending June 30, 1889, in Public Document 19, 1891. We do not know the exact figures of the total receipts on June 30, 1947, but we do know that they were something over $50,000,000.00. By examining the pay roll on page 34 of Document 19, it is discovered that only the Governor and the Secretary of State had a private secretary. The venerable Judges Pryor, Lewis, Holt and Bennett, of this Court, laboriously wrote their opinions in longhand. The Recapitulation Warrants issued for General Expenditure Fund

from July 1, 1889, to June 30, 1890, at page 32 of Document 19 in Documents of 1891, reveal that the Attorney General for that year expended for office expenses the sum of $20.60.''

Conceptions based upon the economics of that day do not fit the economics of this day.

Put surmise out of the case. The stubborn fact remains that the language of the provision does not include employes. Section 246 makes reference to a public officer's assistants as a definite class of employes, yet it is silent as to any limitation upon their compensation.

As in the construction of statutes, the courts often search for an intention respecting a given fact or condition when in truth the members of the legislature, or, as in this case, the framers of the constitution and the people adopting it, never had any intention concerning that fact or condition. In this instance they never contemplated that it would be necessary to consider the application of this section to public employes, for the current standards of their compensation was too low. The framers just never thought about that. We ought not to attribute an intention when there was none, as, for example, concerning airplanes, automobiles, radios and many other familiar things of today. Perhaps had present conditions been foreseen, public servants of the employe class would have been included with those having the dignity and designation of officers. Perhaps also the limitation of compensation would never have been placed so low that in process of time it would come to stifle progress and impede the public welfare. This is particularly true in the operation of the University of the state where the present demand for professional services and the merit of adequate compensation are so great. The inability to meet the competition with public and private educational institutions of other states has impaired the efficiency of our university, as is conceded by all parties. Indeed, the record shows that this limitation has wrought havoc with the faculty.

These conditions were commented upon in the dissenting opinion in Talbott v. Public Service Commission, supra. Judge Rees was then of the opinion, in

which he is now joined by a majority of the court (291 Ky. 109, 163 S. W. 2d 38):

"They (the members of the Convention) intended the section to apply to public officers performing the customary executive, legislative, and judicial functions of government. So long as the section remains in the Constitution it should be strictly enforced, but it should be confined to public officers performing official duties and we should not declare at this late day for the first time that it was intended to include employees. In construing a constitutional provision courts are limited to the language used and are controlled by what the framers of the instrument said and not by what they might have meant to say. Where a constitutional provision is free from all ambiguity there is no room for interpretation or addition. It must be accepted by the courts as it reads. If the framers of our Constitution had any thought that mere employees should be affected by the limitations in section 246, nothing would have been simpler than so to phrase the section as to exclude implication or speculation."

The conclusion is in accord with the traditional rules of construction. The court has nothing to do with the wisdom or expediency of any constitutional or statutory enactment. The basic rule, as stated in the quotation, is to interpret a constitutional provision according to what was said and not what might have been said; according to what was included and not what might have been included. As said in Jefferson County v. Jefferson County Fiscal Court, 273 Ky. 674, 117 S. W. 2d 918, 924: "Neither legislatures nor courts have the right to add to or take from the simple words and meaning of the constitution." We well know that the language was used advisedly and carefully. When the words used express a meaning clearly, distinctly and completely, there is no occasion to have recourse to implication or conjecture by which words are interpolated. Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855; Scharedein v. Harrison, 230 Ky. 1, 18 S. W. 2d 316; Herold v. Talbott, 261 Ky. 634, 88 S. W. 2d 303; Harrod v. Hatcher, 281 Ky. 712, 137 S. W. 2d 405; City of Louisville v. German, 286 Ky. 477, 150 S. W. 2d 931. See also 34 Ky. Law Journal

60, a note by Will H. Fulton, Jr., considering our former opinion on the question at bar.

An intention expressed or fairly to be inferred we are to respect and preserve, to be sure. But the court ought not to press too rigid an interpretation or application of a provision in which the intention is unclear or may only be surmised where it threatens public welfare under changed conditions unforeseen. Gaines v. O'Connell, 305 Ky. 397, 204 S. W. 2d 425.

Our conclusion is that Section 246 of the Constitution is to be construed and applied as written. And it does not include a professor of the University of Kentucky. Therefore, we overrule so much of the opinion in Talbott v. Public Service Commission of Kentucky, 291 Ky. 109, 163 S. W. 2d 33, as is in conflict with this decision.

The judgment is reversed for the entry of one consistent with this opinion.

Chief Justice Sims dissenting.

I am constrained to disagree with the majority of my brethren and, as the question is of the utmost importance, it seems fitting that I should give the reasons for so doing.

The opinion of the majority gives most excellent reasons why section 246 should be amended, with which I am heartily in accord, and then it proceeds to amend our Constitution. This a court has no authority to do. Especially is this true in face of the fact that the amendment of this very section has been submitted to the voters three or four times within the last two decades and has been overwhelmingly defeated each time. The last efforts to remove this salary limitation by amendment was defeated by the electorate in 1943.

While the majority seem to think they have given Sec. 246 a broad construction in keeping abreast of the times and to meet the exigencies of present day conditions, to my mind their interpretation is about as narrow as any they could have put upon it. Their opinion forcefully points out that the framers of the Constitution were bent upon keeping salaries within the $5,000 limitation, and that instrument, as well as the

Constitutional Debates, convinces me it was the intention of the framers of our Constitution that no person, except the Governor, should draw a salary from the public treasury exceeding $5,000 per annum. Then the majority draw the most narrow distinction between "officers" and "employees" in saying that the limitation applies only to the former. Had the section read "no man shall receive more than $5,000 per annum" it would be just as logical to hold that the limitation would not apply to women, as it is to say it applies to officers and not to employees. By reading together secs. 34 and 249 it will be seen that the framers of our Constitution used the terms "officers" and "employees" interchangeably.

Some five years ago this court in Talbott etc., v. Public Service Commission, 291 Ky. 109, 163 S. W. 2d 33, 34, wrote:

"It seems to us to be inconceivable that the members of the constitutional convention would feel impressed with the obligation to limit salaries of those engaged in the performance of duties of grave responsibility, and, at the same time, permit persons in positions subordinate in authority and responsibility to receive unlimited compensation. To attribute to them such intention would be to charge them with a total absence of appreciation or sense of values and would amount to an accusation that they proceeded on an absurd hypothesis. Such interpretation would be to hold that the Constitution forbids officers, upon whom rests the responsibility of approving the expenditure of millions of dollars a year, from receiving as much salary as may be paid to mere messenger boys in the departments such officers direct. That such construction would result in an absurdity does not require reflection, it is apparent on its face. We therefore conclude that section 246 of the Constitution is not limited in its application to that class of employees of the state who are technically known as officers, but that common sense dictates that the word 'officers' must be construed to include, by inference, employees subordinate thereto."

The logic of the above quotation is irrefutable. It stands out as a lighthouse on a rocky reef to show, those who would use the Constitution as a compass, a

course by which to bring our Ship of State safely into port in stormy weather.

I agree with the majority that Martin v. Smith, 239 Wis. 214, 1 N. W. 2d 163, 140 A. L. R. 1063, correctly held that the President of the University of Wisconsin is not an officer within the meaning of the Constitution of that State forbidding any person to hold an office of profit or trust under the United States who holds such an office in Wisconsin. The Talbott opinion is not in conflict therewith. It expressly holds that the President and Professors of our University and Teachers Colleges are employees of the state and are embraced by the provisions of sec. 246 of the Constitution. There, we did not hold teachers are officers but only that the limitation of 246 applies to teachers as well as to officers.

The majority opinion in the Talbott case refused to give 246 a narrow construction, but the dissenting opinion gave it the narrowest interpretation possible and limited its meaning to the very words contained therein. Now come the majority in the instant case and say "but the court ought not to press too rigid an interpretation or application of a provision in which the intention is unclear or may only be surmised where it threatens public welfare under changed conditions unforeseen." After this clear exposition of the law the majority then proceeds to adopt the strict construction of the dissenting opinion in the Talbott case. This does not strike my mind as being either logical or consistent.

It is made clear in the Talbott opinion that the limitation in sec. 246 does not apply to persons, firms or corporations rendering independent services to the State. Such services are neither continuous nor regular and are not of a permanent nature as are those rendered by employees. Persons rendering such services are usually known in law as independent contractors.

In the case at bar, the majority clearly say in the construction of the Constitution courts often search for the intention of the framers of that instrument and the people adopting it. Then follows this sentence: "In

this instance they never contemplated that it would be necessary to consider the application of this section to public employes, for the current standards of their compensation was too low.'' Perhaps when the people adopted their present Constitution in 1891, they did not consider that the ceiling on salaries was too low for the then standards. But the people when that very question was submitted to them in 1943 and again indirectly in 1947 did not think the limitation was too low when considered in the light of economic conditions now existing.

It is my thought that sec. 246 should be amended by a vote of the people and not by judicial interpretation.

For the reasons stated I most respectfully dissent from the majority opinion. I am authorized by Judge Thomas to say that he concurs in this dissent.