Arnold W. CARTER, Appellant,

v.

Jamie D. SMITH and Bourbon County
Board of Education, Appellees.

No. 2010–SC–000295–DG.

Supreme Court of Kentucky.

May 24, 2012.

Joe Francis Childers, Jr., Getty & Childers, PLLC, Lexington, KY, Counsel for Appellant.

Neil Edward Duncliffe, Georgetown, KY, Counsel for Appellee, Jamie D. Smith.

Sam Preston Burchett, Lexington, KY, Counsel for Appellee, Bourbon County Board of Education.

Opinion of the Court by Justice ABRAMSON.

After serving eighteen months as the superintendent of Bourbon County public schools, Appellant Arnold Carter transferred into the position of consultant to the school district pursuant to a so-called "exit strategy." The details of Carter's resignation and consulting contract were discussed and determined in a closed session during the last regular meeting of the Bourbon County Board of Education in December 2002. Appellee Jamie Smith, a parent and concerned citizen, challenged the Board's actions as violative of Kentucky's Open Meetings Act. After careful review, we hold the Board did violate the Open Meetings Act when it discussed Carter's resignation and consulting contract in closed session. Carter's consulting contract was voidable as a matter of law and was properly voided by the Circuit Court. While Carter may retain the monies already paid him pursuant to the contract, as ordered by the Circuit Court, he is not entitled to recover any additional payments. The funds held in escrow are to be remitted to the Bourbon County public schools.

### RELEVANT FACTS

On July 1, 2001, Carter became Superintendent of the Bourbon County public schools, a position in which he was to serve until June 30, 2005. In July 2002, the five-member school board increased Carter's starting salary of $89,500.00 by 2.7 percent to $91,916.50. The Bourbon County public school system was experiencing difficulties during this time and in 2002 two Board members resigned and were replaced by appointees Lonnie Conley and Gus Koch. In November 2002, Koch was elected to retain his position and Gary Linville was elected to Conley's position after Conley decided not to run for the seat.

This change in Board membership was significant for Carter because he had previously enjoyed a favorable relationship with the Board but was now facing a difficult year with an incoming Board whose majority was dissatisfied with his performance as superintendent. It is unclear from the record as to who broached the subject, but Carter's resignation and change to a "consultant" position became the topic of discussion in the fall of 2002. At that time, several informal meetings were held on the matter, including one between Koch, Conley, Linville and Carter. At this meeting, the Board members indicated their interest in hiring their own superintendent and Carter, in turn, made it clear he would be willing to transition into a consultancy position. Koch and Conley testified that during this meeting Carter went on a "fishing expedition" to see what he could get in exchange for his willingness to resign as superintendent and become a consultant. Carter also met and discussed his exit strategy with each Board member and with the Board's attorney, Robert Chenoweth, who had experience arranging similar transitions for several other superintendents. According to Carter, all five Board members were amenable to the idea, though his compensation and the length of his consulting contract were in dispute.

On December 19, 2002, the Board met in regular session for the last time before the

new members assumed office. The agenda for the meeting, which Carter and Chenoweth prepared, indicated the Board would go into executive session "to discuss pending litigation and personnel." Prior to the meeting, the Board members were made aware that the purpose of the closed session was to discuss Carter's resignation and his appointment as a consultant. During the closed session, in which Carter and Chenoweth participated, Board Chairperson Geraldine Summay presented the Board with a draft of Carter's consulting contract, which she and Chenoweth had fully prepared prior to the meeting. After meeting for several hours, the Board returned to open session and, without discussion, voted 3–2 to accept Carter's resignation as superintendent and to authorize Summay to sign the agreement appointing Carter as a consultant for one year, from January 1, 2003 to December 31, 2003, at $133,063.09 plus $3,000.00 in moving expenses. Though Carter performed only about two weeks of consulting work in all of 2003, he received the monthly payments provided for in the consulting contract for January and February 2003, totaling $20,536.92. Further payments were suspended upon issuance of the temporary injunction by the circuit court.

By the time of the December 19, 2002 meeting, Appellee Jamie Smith had already filed six challenges to the Board's conduct with the Kentucky Attorney General, claiming the Board had repeatedly violated Kentucky's Open Meetings Act (OMA), codified at Kentucky Revised Statutes (KRS) 61.800–61.850. The Attorney General had resolved five of the challenges in Smith's favor. When the Board failed to take corrective action, Smith filed a Complaint against the Board in Bourbon

Circuit Court, which she amended to include the December 19, 2002 meeting. Following a hearing in early 2003, the circuit court found the evidence may establish "the actions taken by the Bourbon County Board of Education at its December 19, 2002 meeting violated the Kentucky Open Meetings Law" and therefore temporarily enjoined the Board from paying Carter further sums under the contract. The court ordered that money instead be placed in an escrow account. The Board and Smith then both moved for summary judgment.

In granting summary judgment, the circuit court found KRS 61.810(1)(f) permitted the Board's closed session discussion of Carter's resignation but not its discussion of Carter's consulting contract. The court consequently voided the consulting contract, held the Board was not liable to Carter for further payments under the contract and ordered the funds held in escrow be released to the Board. The Court of Appeals, in an opinion consolidating Carter's appeal and Smith and the Board's cross-appeals, affirmed the trial court on all issues.

Now on discretionary review to this Court, Carter argues the Board was permitted, under the personnel and litigation exceptions, to enter closed session to discuss his resignation and consulting contract. In the alternative, Carter asserts his consulting contract is valid because, even if the Board did not strictly adhere to the letter of the law when it discussed his resignation and consulting contract in closed session, it nevertheless ratified its actions and "substantially complied" with the OMA by taking a vote in open session pursuant to KRS 61.815(1)(c).[1]

---

1. Carter has abandoned both his *quantum meruit* claim and the argument he made to the Court of Appeals in a footnote that his

resignation was conditioned on his receipt of the consulting contract and thus is, essentially, undone by the voiding of that contract.

Upon review, we reverse in part, affirm in part and remand to the trial court for proceedings consistent with this opinion. The trial court and the Court of Appeals correctly found the Board violated the Open Meetings Act when it discussed Carter's consulting contract in closed session. However, the trial court and the Court of Appeals erred in holding the Board could discuss Carter's resignation in closed session. These discussions were not proper under either the personnel or litigation exceptions of the OMA. Further, the Board could neither ratify action taken in an improper closed session nor be found in substantial compliance with the law where it acted in complete contravention of the statute. As such, Carter's consulting contract is voidable and was nullified by the circuit court's injunction and final judgment. Although Carter may retain the payments he has already received under the consulting contract, the funds held in escrow belong to the school district.

### ANALYSIS

■ The standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hammons v. Hammons*, 327 S.W.3d 444 (Ky.2010); CR 56.03. The record must be viewed in a light most favorable to the nonmoving party and all reasonable doubts must be resolved in that party's favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). The material facts here are undisputed. We review the trial court's summary judgment ruling and the Court of Appeals opinion *de novo*. *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729 (Ky.2011).

■ The General Assembly has declared the "formation of public policy is public business and shall not be conducted in secret." KRS 61.800. The few exceptions to this open meetings requirement are located in KRS 61.810. These exceptions must be strictly construed "so as to avoid improper or unauthorized closed, executive or secret meetings." *Floyd County Bd. of Educ. v. Ratliff*, 955 S.W.2d 921, 923 (Ky.1997); KRS 61.800 ("[T]he exceptions provided for by KRS 61.810 or otherwise provided for by law shall be strictly construed."). Carter maintains the Board's retreat to closed session to discuss his resignation and consulting contract was permissible under two of the exceptions to open meetings: (1) the "personnel exception," located at KRS 61.810(1)(f); and (2) the "litigation exception," located at KRS 61.810(1)(c). We first address the applicability of the latter exception.

### I. The Litigation Exception Does Not Apply Where There is Insufficient Threat of Litigation.

■ Under the litigation exception, a public agency may enter closed session for "discussions of proposed or pending litigation against or on behalf of the public agency." KRS 61.810(1)(c). This exception covers discussions of strategy, tactics, possible settlement and other matters pertaining to the case. Though the exception may be invoked when litigation is not currently pending but is only threatened or proposed, it does not apply "any time the public agency has its attorney present" or where the possibility of litigation is remote or unsubstantiated. *Ratliff*, 955 S.W.2d at 924. The threat or proposition of litigation must be substantial to trigger the exception. There must be a direct suggestion of litigation conditioned on the occurrence or nonoccurrence of a specific event. 84 Op.

Ky. Att'y Gen. 240 (1984).[2] By way of illustration, the exception would apply where litigation has been suggested because a tortious injury occurred on school property, a teacher assaulted a student, or an employee received a letter terminating employment in breach of a contract.

■■■ The litigation exception does not apply in this case because there was insufficient threat or possibility of litigation. Carter seeks refuge under this exception on the basis that if the Board ever did terminate his employment in violation of his employment contract, he could then consider bringing suit against the Board. This remote possibility of litigation is not enough to trigger the litigation exception. At no time did Carter ever threaten litigation or intimate he would bring suit if the Board actually took the steps necessary to remove him as superintendent.[3] Nor did the Board ever state it would remove Carter or even that his performance was to be evaluated. As Carter himself testified in his deposition, his dismissal was never on the agenda of any Board meeting, no one ever made a motion to dismiss him, and he never received any communication from the Board regarding his dismissal. Rather, Carter was aware he faced a difficult year with an adverse board and so worked out a beneficial exit strategy with the outgoing, favorable Board, which allowed him to retain employment and earn substantially more in a year as a consultant than he would have earned in that same period as superintendent. The unofficial meetings between Carter and members of the Board, in which they discussed this exit strategy, were not sufficient precipitating events to trigger the litigation exception. In short, the litigation exception does not apply in this case to justify the closed session.

## II. The Personnel Exception Does Not Apply to Discussions of an Employee's Resignation or Contracts For Independent Contractors.

■■■ A public agency's authority to go into a closed session relative to personnel matters is severely restricted. Under the personnel exception, a public agency may enter closed session only for "discussions or hearings which might lead to the appointment, discipline, or dismissal of an individual employee, member, or student." KRS 61.810(1)(f). These three topics are the only personnel matters a public agency may discuss in closed session. Discussions of any other matters are expressly precluded. The statute itself underscores the specific nature of the exception by explicitly stating the exception does not "permit discussion of general personnel matters in secret." *Id.*

2. While not binding on courts, Opinions of the Attorney General are considered highly persuasive and have been accorded great weight. *Palmer v. Driggers*, 60 S.W.3d 591, 596 (Ky.App.2001).

3. A superintendent may not be removed simply by a vote of the school board. The process requires not only action by the school board, including a supermajority vote, but also the involvement of the commissioner of education: "A superintendent of schools may be removed for cause by a vote of four-fifths (4/5) of the membership of a board of education and upon approval by the commissioner of education ... Written notice setting out the charges for removal shall be spread on the minutes of the board and given to the superintendent. The board shall seek approval by the commissioner of education for removing the superintendent. The commissioner of education shall investigate the accuracy of the charges made, evaluate the superintendent's overall performance during the superintendent's appointment, and consider the educational performance of the students in the district. Within thirty (30) days of notification, the commissioner of education shall either approve or reject the board's request." KRS 160.350(3).

## A. The Personnel Exception Did Not Cover Discussions of Carter's Resignation.

The Board's discussion of Carter's resignation in closed session was not covered by this exception because an employee's resignation is not one of the three permissible personnel topics enumerated in KRS 61.810(1)(f). While the statute does not define "dismissal," that term has a clearly recognized, common meaning in the employment context, which is distinct from a "resignation." A dismissal refers to an employer firing or discharging an employee, whereas a resignation refers to an employee's voluntary relinquishment of his or her employment. *Webster's II New College Dictionary* 327, 943 (1995); *Black's Law Dictionary* 537, 1424 (9th ed.2009). The General Assembly determined the specific personnel subjects that can be discussed in closed session and it expressly did not include an employee's resignation.

As noted above, dismissing Carter was never discussed at any of the Board meetings, it was not on any meeting agenda, and the Board never told Carter he would be dismissed or that such action was even under consideration. Carter testified the purpose of the closed session was to discuss his resignation and appointment as consultant, and the entire Board knew beforehand that this was the purpose of the closed session. Similarly, other Board members testified in deposition that Carter's resignation and consultancy were the topics discussed in the closed session. None of these Board members remembered discussions about firing or dismissing Carter. The Board's misplaced reliance on KRS 61.810(1)(f) for closed session discussion of Carter's resignation reflects a liberal construction of the exception that is not supported by either its express language or the strict construction mandate

in KRS 61.800. To reiterate, "general personnel matters" are not to be discussed "in secret." KRS 61.810(1)(f).

## B. The Personnel Exception Did Not Cover Discussions of Carter's Consulting Contract.

Nor did the personnel exception permit the Board's negotiation of Carter's consulting contract in closed session. That discussion concerned hiring Carter as an independent contractor and the personnel exception explicitly applies only to discussions of the "appointment, discipline or dismissal of an individual employee, [Board] member, or student." KRS 61.810(1)(f). As commonly recognized, an independent contractor is distinct from an employee, the former being someone who is hired to undertake a specific project and is free to choose the means and methods for completing the work, and the latter being someone who works under an express or implied contract for an employer who determines the means and methods by which the employee performs and completes the work. *Black's Law Dictionary* 602, 839 (9th ed.2009). *See also Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755 (Ky.1955) (enumerating factors that distinguish an employee from an independent contractor).

This Court has previously addressed the status of independent contractors working for public agencies and has held they do not constitute employees. In *Talbott v. Public Service Commission*, 291 Ky. 109, 163 S.W.2d 33 (1942), this Court's predecessor held that attorneys, technical advisors and consultants engaged by the Public Service Commission were independent contractors rather than employees of the Commonwealth. Even more specific to this case, the Court has recognized the distinction between an independent contractor and an employee employed by a school board. In *Lewis v. Morgan*, 252

S.W.2d 691 (Ky.1952), the Court held the school board's accountant, being "a person generally regarded as in the pursuit of an independent business or profession ... [who] undertakes to do a specific piece of work, using his own means without becoming subject to the control of the person for whom the work is being done in respect to all its details" was an independent contractor, not an employee of the school board. Similarly, in *Hobson v. Howard,* 367 S.W.2d 249 (Ky.1963), the Court was called upon to decide whether a school board could arbitrarily terminate the employment of the board's attorney or whether the attorney was due the processes accorded a "public school employee." Determining a traditional attorney-client relationship existed between the attorney and the board, the Court concluded "that since appellant was an independent contractor he could not be a 'public school employee.'" *Id.* at 249–50. *See also Swate v. Medina Community Hosp.,* 966 S.W.2d 693, 699 (Tex.App.1998) (holding the personnel provision of their open meetings act, which specifically covers "officer[s] and employee[s]," "does not apply to discussions regarding independent contractors").

 Here, Carter's consulting contract could not be discussed in closed session because it concerned hiring Carter as an independent contractor, not as an employee. Neither party disputes Carter was being hired as an independent contractor, and the contract itself makes this clear, stating: "The Board shall retain as a consultant (*independent contractor*) Carter commencing January 1, 2003. The term of the *independent contractual relationship* between Carter and the Board shall end on December 31, 2003." (emphasis added). The contract also provides, in part, that "[i]n consideration for the consultancy services *as an independent contractor* to be provided by Carter to the

Board, the Board shall ...." (emphasis added). The open meeting exceptions must be strictly construed, *Ratliff,* 955 S.W.2d at 923, and the personnel exception specifies that it only applies to "an individual employee, member or student," not to independent contractors. KRS 61.810(1)(f). The Board may have certainly preferred to negotiate the details of Carter's arranged exit strategy behind closed doors, but "the exceptions to the open meetings laws are not to be used to shield the agency from unwanted or unpleasant public input, interference or scrutiny." *Ratliff,* 955 S.W.2d at 924. By excluding the public from the discussion of Carter's consulting contract, the Board expanded the intended scope of the personnel exception and improperly concealed matters otherwise appropriate for public view. "The people, in delegating authority, do not give their public servants the right to decide what is good for the public to know and what is not good for them to know...." 1974 Ky. Acts Chap. 377, HB 100. In summary, neither the litigation exception nor the personnel exception permitted the Board's discussions of Carter's resignation and consulting contract in closed session.

## III. The Board Could Not Ratify Action Taken in an Improper Closed Session.

KRS 61.815(1)(c) provides, "no final action may be taken at a closed session." Carter points out the Board did not vote on his resignation and receipt of the consulting contract until returning to open session. He argues that by voting in open session in accordance with KRS 61.815(1)(c) the Board ratified the actions taken in the improper closed session. As properly ratified, Carter argues, the actions should be upheld. We disagree.

A public agency cannot ratify actions improperly taken in closed session. When conversations and actions regarding the public's business should not have occurred in private in the first place, an agency cannot render those actions valid by simply taking a vote in open session without any discussion of the matter. To permit the Board to do just that in this case would eviscerate the Open Meetings Act. Contrary to Carter's argument, it is inconceivable that the General Assembly intended to allow a public agency to conduct its business behind closed doors, regardless of whether an exception authorized the closed session, and then protect its private dealings by taking a quick vote in open session and claiming the secret actions valid by ratification. Such an interpretation is fundamentally at odds with the purpose and spirit of the Open Meetings Act. "[T]he formation of public policy is public business and may not be conducted in secret ... [T]he people of this Commonwealth do not yield their sovereignty to the agencies which serve them ... [but] insist on remaining informed so they may retain control over the instruments they have created." 1974 Ky. Acts Chap. 377, HB 100. The requirement on which Carter relies, that no final action be taken in closed session, applies to all properly-conducted closed sessions; it does not legitimize unauthorized conduct in an improper closed session. If a public agency wants to effectuate actions that were originally taken in an improper closed session, it must, to the extent possible, begin anew. Though a bell can never truly be un-rung, the agency must take up the matter and start over in open session, handling the matter as the agency would any business the law requires be conducted before the public.

In this case, the Board negotiated the details of Carter's consulting contract in private and, upon returning to open session, simply took a vote to approve what was decided in secret. No discussion was had, no explanation was offered and there was no opportunity for input or questions from the public. The actions decided upon in the improper closed session could not be ratified by this quick up-and-down vote in open session.

## IV. The Board Did Not Substantially Comply With the Open Meetings Act.

A public agency's failure to comply with the strict letter of the law in conducting meetings violates the public good. Thus, the Open Meetings Act provides that "any rule, resolution, regulation, ordinance, or other formal action of a public agency without substantial compliance with the requirements of KRS 61.810, 61.815, 61.820, and KRS 61.823 shall be voidable by a court of competent jurisdiction." KRS 61.848. Carter argues the Board's actions, even if not in strict compliance with the Open Meetings Act, should be upheld because the Board substantially complied with the law when it voted on his resignation and consulting contract in open session per the requisites of KRS 61.815(1)(c). As with the ratification argument, we are not persuaded.

While there may be occasions in which action by a public agency that does not strictly comply with the law is nevertheless upheld on the basis of substantial compliance, a closed session that does not comport with any of the clearly delineated and strictly construed exceptions of the Open Meetings Act is definitely not one of them. The Open Meetings Act explicitly sets out the thirteen reasons for which a public agency may enter into closed session. A closed session either fits within one of these exceptions or it does not. There cannot be substantial compliance when an agency entirely fails to comply with the

law by entering a closed session to which none of the exceptions apply.

The Board's closed session in this case was not justified by any of the Open Meetings Act exceptions. Neither the litigation exception, nor the personnel exception, nor any of the other eleven exceptions permitted discussion of Carter's resignation and consulting contract in private. There was no substantial compliance.

## V. The Board's Improper Actions are Voidable by a Court.

As noted above, when an agency takes action that is not in "substantial compliance" with the law, that action "shall be voidable by a court." KRS 61.848. A "voidable" action is an action that is valid until it is annulled. *Black's Law Dictionary* 1709 (9th ed.2009). The Board and Smith contend the statute, despite its plain language, should be read to require that action not in substantial compliance is not "voidable" but instead is "void," that is, a nullity from the outset. *Black's Law Dictionary* 1709 (9th ed.2009). We are bound, however, by basic principles of statutory construction to the plain language of the statute. When interpreting a statute, "[r]esort must be had first to the words, which are decisive if they are clear." *Commonwealth v. Gaitherwright*, 70 S.W.3d 411, 414 (Ky.2002). The plain meaning of the statutory language "is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." *Stopher v. Conliffe*, 170 S.W.3d 307, 308–09 (Ky.2005).

The language in this provision is clear. The General Assembly specifically stated that noncompliant action is "voidable," not "void." We may not interpret a statute at variance with its stated language. *Birdsong v. State*, 347 S.W.3d 47, 49 (Ky.2011). What's more, previous decisions have recognized this provision means what it unambiguously says, that noncompliant action is valid until nullified by a court. The court in *Stinson v. State Bd. of Accountancy*, 625 S.W.2d 589, 592 (Ky. App.1981) clarified that the voidability provision "renders an action taken without substantial compliance with KRS 61.815, not void but voidable." Further, the Attorney General explained over thirty years ago,

[A]ctions taken in violation of the Open Meetings Law are voidable by the circuit court. This means that any person may bring an action in the circuit court and if the court finds that the board violated the law, it may declare the action taken void and of no effect. Until the action taken is declared void by the court it remains an official and a valid action of the board . . . .

79 Op. Ky. Att'y Gen. 516 (1979).

Additionally, courts in other jurisdictions with similar voidability provisions in their open meetings laws have adhered to the same interpretation. The comparable provision in New Jersey states, "Any action taken by a public body at a meeting which does not conform with the provisions of this act shall be voidable." N.J.S.A. 10:4–15(a). As that state's Superior Court explained, "A voidable act is one which may be avoided, but until this is done, in the regular course of judicial proceedings, the action stands in full force and effect." *Houman v. Mayor and Council of Borough of Pompton Lakes*, 155 N.J.Super. 129, 382 A.2d 413, 429 (N.J.Super.Ct. Law Div.1977). Louisiana has also interpreted its voidability provision to mean that action taken by a public body without compliance with the open meeting law is voidable, "not an absolute nullity." *Wagner v. Beauregard Parish Police Jury*, 525 So.2d 166, 170 (La.Ct.App.1988). And courts in Texas, have repeatedly explained that its open

meeting act expressly provides " '[a]n action by a governmental body in violation of this chapter is voidable'—not void or void *ab initio*. The terms have distinct legal meanings. If an action is void or void *ab initio*, the transaction is a nullity. If, however, conduct is merely voidable, the act is valid until adjudicated and declared void." *Love Terminal Partners v. City of Dallas*, 256 S.W.3d 893, 897 (Tex.App.2008).

Accordingly, Carter's consulting contract was valid until nullified by the circuit court, effective as of the entry of the temporary injunction on March 18, 2003. Carter thus may retain the monies already paid him under the contract for the work he has performed, but he is not entitled to any additional payments. The funds in the escrow account belong to the Bourbon County public schools.

### CONCLUSION

Carter sought refuge for the Board's closed session discussions of his resignation and consulting contract under both the litigation and personnel exceptions of the Open Meetings Act. Neither exception applies, however, to justify the closed session. There was insufficient threat of litigation to trigger the litigation exception and the personnel exception does not apply to discussions regarding an employee's resignation or the hiring of an independent contractor. The Board could not ratify actions taken in an improper closed session nor could it argue substantial compliance where it entirely failed to comply with the law. Having failed to substantially comply with the Open Meetings Act, the Board's actions were voidable by a court. Because Carter's consulting contract was "voidable," rather than "void," he may retain the funds already paid to him but the Board is entitled to the funds held in escrow. The case is remanded to the Bourbon Circuit Court for proceedings consistent with this Opinion.

All sitting. All concur.