## Commonwealth, by v. Ewald Iron Company.
### Same v. American Tobacco Company.
### Same v. Belknap Hardware & Mfg. Company.
### Same v. National Lead Company.
### Same v. Bishop, Extx. of Harry Bishop.
### Same v. Torbitt's Executor.

(Decided March 25, 1913.)

Appeals from Jefferson Circuit Court
(Chancery Branch, First and Second Divisions).

1. Officers—Public—Compensation—Applicability of Sections 161 and 235 of Constitution.—Sections 161 and 235 of the Constitution, providing that the compensation of officers shall not be changed during their term only apply to officers having a fixed term, and do not include officers created by the Legislature who may be removed at the pleasure of the appointing body.

2. Taxation—Revenue Agents—State May Control Suits.—In instituting and prosecuting suits for the recovery of taxes the Commonwealth is the real plaintiff in the action, and through the legislative department has the right to control it as it pleases.

3. Legislature—Has Unrestricted Right to Repeal Grants to Officers or Individuals Unless Contract Right Impaired.—There is no limitation upon the right of the Legislature to repeal or modify at its pleasure a grant of power or authority to one of its citizens that does not involve interference with a vested contract right that he has secured under the grant, and this principle applies to legislative officers not protected by the Constitution and to all other persons exercising authority under legislative grant.

4. Legislature—Not Bound by Previous Legislation.—Subject to the exception that contract rights cannot be impaired, there is no statute that cannot be repealed, and there is no such thing as an irrepealable legislative act.

5. Penalties—Officer or Citizen—No Vested Right in.—Where an act of the Legislature provided that revenue agents should receive as compensation a penalty to be paid by the delinquent taxpayer, the revenue agent had no vested contract right in the penalty until it was earned, and the Legislature had the right to repeal or modify the act under which the revenue agent was acting, although the effect of the repeal or modification might be to deprive him of the penalty that he might earn.

6. Costs.—Where an act under which a revenue agent was acting provided that he should pay the costs if unsuccessful, a subsequent Legislature had no power to amend the act so as to burden the agent with the costs without giving him reasonable opportunity to prosecute the case to judgment.

7. Juridical Day.—A juridical day means a day in which a court is open or in session.

MATT J. HOLT for appellant.

GIBSON & CRAWFORD for Ewald Iron Co.

GIBSON & CRAWFORD for National Lead Company.

HUMPHREY, MIDDLETON & HUMPHREY for Bishop's Executrix.

J. C. DODD for Torbitt's Executor.

BODLEY & BASKIN for Belknap Hardware & Manufacturing Company.

GIBSON & CRAWFORD for American Tobacco Company.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming in Part and Reversing in Part.

These six appeals involve one common question of law, which we will dispose of before taking up separately the facts of each case.

Proceedings in the county court of Jefferson County in the name of the Commonwealth were instituted by Hopkins, revenue agent for the state at large, against the six appellees, under section 4260 of the Kentucky. Statutes, for the purpose of having assessed property owned by them respectively alleged to have been omitted from assessment. All of the proceedings were instituted prior to July 1, 1911, and all of them were dismissed without prejudice on motion of the defendants, now appellees, subsequent to July 1, 1912. It is the contention of counsel for appellees that the dismissals were authorized by sections five and six of an Act of the Legislature passed at its session of 1912 and that became a law on June 17, 1912. These sections read as follows:

"5. That where any suit instituted by an Auditor's agent or other officer of this Commonwealth to cause the listing for taxation of property alleged to be omitted from assessment is pending in any court of this Commonwealth on July 1, 1912, and it shall appear from the records of said court that for not less than one year prior to July 1, 1912, no steps have been taken by the officer instituting said suit for the prosecution of said suit other than docketing said case or remanding said case or passing said case from time to time, it shall be the duty of the court in which such action is pending, upon the motion of the defendant in such action, to cause such action to be dismissed without prejudice to the Commonwealth and that the defendant recover from the officer instituting such action his costs therein expended. Provided, however, it shall be made to appear to the satisfaction of the court that the delay in the prosecution of said action has been due to the defendant or by agreement between such agent or his attorneys and defendant, or that such suit contains a question of law which is contained in some other suit, which latter suit is being pressed for a decision on the legal question involved, the period of time shall only be counted from the time when the defendant ceased to obstruct the prosecution of the suit, or from the time when a final decision of the legal question in-

volved in the other suit mentioned shall have been determined.

"6. That on and after July 1, 1912, it appearing to any court in which such an action as set out in section 1 is pending either upon original jurisdiction or appeal that no steps other than docketing the case or remanding the case, or passing the case, have been taken by the Commonwealth for the prosecution of said action for a period of two terms of such court, when it is a court having terms, or for a period of ninety (90) juridical days, when it is a court of continuous session it shall be the duty of the judge on the motion of the defendant in such case, to cause said case to be dismissed without prejudice to the Commonwealth, and in which event the defendant shall recover his costs in said case expended from the officer instituting such action. Provided, however, that it shall be made to appear to the judge that such delay is at the instance of or caused by defendant, or by agreement between plaintiff and defendant, or their attorneys, then the time shall be computed only from the time when the defendant ceased to obstruct the litigation, or from the time when said agreement expired, and further provided that in any case in which an action of law shall be involved, which is embraced in one or more other cases, and when one of the other cases is being prosecuted for the purpose of obtaining a decision on the question of law involved, the court or the judge thereof in vacation, on such fact being made to appear to him by the officer instituting such action, may enter an order extending the time for the prosecution of said action until the final decision of the other case, or to the time agreed upon by the parties."

Section 1 of the Act referred to in section 6, provides in substance, that the Auditor of Public Accounts may appoint a revenue agent in each county, and in addition four revenue agents from the state at large, and may also appoint a supervisor of revenue agents. It also provides that if a revenue agent desires to institute a proceeding to have omitted property assessed he shall first obtain the consent of the supervisor of revenue agents.

The validity of sections five and six of the Act of 1912 are assailed by counsel for the revenue agent upon several grounds, the principal objection to them being that they deprive the revenue agent who instituted the proceedings of the compensation allowed him by law for pro-

curing the assessment of the omitted property, and burden him with the costs of the dismissed proceedings.

To understand the position of counsel it will be necessary to refer to some sections of the law in force before 1912 providing for the creation of revenue agents and defining their powers and duties. Section 4258 of the Kentucky Statutes provides in part that:

"The Auditor of Public Accounts may appoint a revenue agent in each county of this Commonwealth, and may, in addition, appoint not exceeding four revenue agents from the state at large, whose term of office shall be the same as that of the Auditor (four years), and expire at the same time, unless they, or any one of them, are removed by him. * * * * * * ''

Section 4259 provides in part that:

"Before entering upon the discharge of the duties of office, such revenue agents shall take the oath required of other officers, and shall execute a bond to the Commonwealth of Kentucky, with good security, conditioned that such revenue agent will faithfully discharge the duties of his office. * * * The bond shall be renewed every two years, or as often as the Auditor may require."

Section 4260, after conferring power upon the revenue agents to cause to be listed for taxation all omitted property, and describing the character of proceeding that may be instituted by the agent in the county court of the county in which the alleged omitted property is taxable, provides that:

"At the next regular term of the county court, after the summons has been served five days, if it shall appear to the court that the property is liable for taxation, and has not been assessed, the court shall enter an order fixing the value thereof at its fair cash value estimated as required by law. If not liable for taxation, he shall make an order to that effect, and the officer instituting said proceedings shall be liable on his official bond to the defendant for all costs incurred by him in defending said proceedings, and this shall apply to all courts to which said proceedings are taken. * * * If the court shall decide that the property is liable to assessment, and has not been assessed, the clerk of the county court shall enter a judgment on a book kept for that purpose assessing said property and fixing the value thereof, and he shall certify the assessment of said property and its value. * * *
All persons owning property which may be assessed as

herein provided, shall, in addition to the taxes, pay the costs of the proceedings and a penalty of twenty per centum on the amount of the State and county taxes due, except where such property shall have been duly listed by the owner thereof. The taxes, costs and penalties shall be collected and accounted for as other taxes and penalties are required to be collected and by the same officers. As compensation for his services in causing such property to be assessed, the officer filing the statement shall be entitled to the penalty of twenty per centum, and the same shall be paid to him by the county tax collector collecting said county taxes and penalty thereon within thirty days after receiving same, and by the officer of the State collecting or receiving State taxes within thirty days after receiving same.''

Section 4260b provides in part:

''It shall be the duty of the county clerk, upon filing of any statement by any officer for the assessment of omitted property, to enter the name of the county attorney for said county as attorney on behalf of the State and county, and it shall be the duty of said county attorney to appear and prosecute said proceedings in all the courts to which the same may be taken for trial.   *   *   *   *   * When he is so present and assists in said proceeding he shall be allowed as compensation for his services fifteen per centum of the amount of said State and county taxes.''

Section 4266 provides that:

''The Commonwealth shall not be liable for or pay any cost on any action or proceeding instituted by any revenue agent or sheriff, nor shall it be liable for or pay any sum to a revenue agent or sheriff for any services as such except out of the amounts which may be collected as penalties, in cases prosecuted by such officers under this article.''

Hopkins was appointed revenue agent for the State at large by Auditor James in 1908, and his term of office expired with the expiration of the term of office of Auditor James, on the first Monday in January, 1912, and the proceedings here in question, as well as many others of like character, were instituted by Hopkins as revenue agent between the date of his appointment and the first Monday in January, 1912, and some two thousand of the proceedings so instituted were pending on July 1, 1912.

It is now the contention of counsel for Hopkins that the institution of these proceedings constituted a contract between him and the State under which he was invested with exclusive authority to prosecute them to a final judgment, and thereby receive the prescribed penalty in cases where he succeeded in showing that the party proceeded against had omitted from assessment property subject to taxation. It is further contended that sections five and six of the Act of 1912, authorizing the dismissal of these proceedings for the reasons stated, impaired the obligation of the contract entered into between Hopkins and the State in that they virtually deprived him of the compensation he might reasonably expect to receive from the successful prosecution of the proceedings instituted, and are, therefore, in violation of section 19 of the State Constitution forbidding the enactment of any law impairing the obligation of contracts.

We have been furnished by counsel for both parties with extended arguments concerning the question whether Hopkins is an officer of the State or is to be treated as a mere agent of the State. Counsel for Hopkins insist that he is not an officer, while counsel for appellees say that he is. We will not, however, take up time in a discussion of this question, as it does not seem to us at all material whether Hopkins be treated as an officer of the State or merely a private individual invested for the time being with certain powers and duties as an agent of the State.

We may, however, add in passing that he was not a constitutional officer or protected by sections 161 or 235 of the Constitution providing that the compensation of officers shall not be changed during their term. These sections only apply to officers having a fixed term during which their compensation cannot be changed, and do not include officers who may be removed at the pleasure of the appointing body, as Hopkins might have been. We so held in City of Lexington v. Rennick, 105, Ky., 779, saying:

"These sections were designed to protect an officer during his term in the enjoyment of the compensation attached to it when he was elected, and prevent his appealing to the city authorities for more; but it can have no reasonable application to an officer who may be turned off at pleasure, because if the city may turn him off, and then hire him or somebody else any day at another price,

we see no reason why it may not reach the end directly and cut his salary down in the first place. Such constitutional provisions are common, and are uniformly, so far as we have seen, confined to officers having definite terms." To the same effect are London v. City of Franklin, 118 Ky., 105; Parsons v. Breed, 126 Ky., 767.

Whether Hopkins as revenue agent be regarded as a public officer or as a mere agent of the State, we think the Legislature had the unquestioned power to enact the legislation of 1912, although the effect of such legislation might be to deprive him of compensation he might reasonably expect to receive as the result of the successful prosecution of the proceedings dismissed before final judgment under authority of this Act, unless it be that a revenue agent by his appointment acquires a vested contract right with the State that cannot be impaired.

It is evident that in instituting and prosecuting these suits, whether as officer or agent, Hopkins was acting for the Commonwealth. It was the real plaintiff and the real beneficiary in the proceedings instituted by him, and had the right to control them in any manner that it pleased and assuming that a revenue agent has no vested contract right that could not be interferred with, the legislature could at any time have repealed the entire law or any part of it, or have modified it in any way that suited its pleasure, or have abolished the office of revenue agents.

Hopkins as revenue agent accepted the employment under an act giving the Auditor the right to remove him at pleasure, and aside from this, with the distinct understanding that is necessarily implied in all legislative grants of authority, that the Legislature may at its pleasure repeal the grant unless it impairs some vested contract right. We know of no limitation upon the right of the Legislature to repeal or modify at its pleasure a grant of power or authority to one of its citizens that does not involve interference with a vested contract right that he has secured under the grant. Subject to the exception noted, there is no statute that cannot be repealed, and so there is no such thing known to our law as an irrepealable legislative act. Cooley's Constitutional Limitations, 6th Edition, pages 143 and 343. And this principle applies to legislative officers not protected by the Constitution and to all other persons exercising authority as agents or representatives of the State under legislative grant.

It follows from what we have said that the only remaining inquiry is, did the revenue agent have in these dismissed cases any vested contract right that could not be impaired? We think not. Keeping in mind the fact that the revenue agent is not entitled to any compensation until a final judgment has been rendered in a proceeding instituted by him directing certain property charged to have been omitted to be assessed for taxation, it is quite difficult to understand just what contract right was impaired by the legislation here questioned. The State did not agree to pay the revenue agent any thing for his services. At no time and in no manner could he assert a claim against the State. The statute only gave him the right to collect and retain for his services a penalty amounting to twenty per cent of the amount of the taxes recovered on the property assessed for taxation, and this penalty the delinquent taxpayer was compelled to pay.

If the penalty had accrued or had been earned as the result of the successful prosecution to a final judgment of these proceedings, and the State had endeavored to deprive the revenue agent of the compensation thus earned by repealing the statute under which he performed the service, there would be much force in the contention that the State should not be allowed to do this, and it might well be maintained that such action on its part would be a violation of the contract rights of the revenue agent if he should be treated as not a public officer. But we are not dealing with any such state of facts. The revenue agent had not become entitled to any compensation in any of these cases, although it may be assumed that some of them he might have prosecuted to a successful conclusion and have thereby earned his compensation.

So that as the case for the revenue agent stands it must be sustained if at all on the proposition that the State had no power to direct the dismissal of cases in which he might have become entitled to compensation for prosecuting to a final judgment. In our opinion, this proposition, independent of the fact that no authority can be found in support of it, is unsound in principle. It would be an astonishing condition of affairs if the State were denied the right to control as it pleased legislation under authority of which subordinate officers or agents who might be dismissed at any time were acting, and through which they might expect to receive for their

efforts in certain contingencies certain compensation. When the unlimited power of the Legislature to repeal the laws creating revenue agents is conceded, as it must be, there is no room for argument in support of the theory that the legislature may not also change and amend the law so as to accomplish what might have been accomplished by its repeal.

Nor have we been referred by counsel for the revenue agent to any authority holding that either an officer or an agent has a vested contract right that cannot be impaired in a suit to recover penalties before the suit has been prosecuted to a final conclusion and the penalties earned. On the contrary the uniform ruling of all the courts so far as our investigation goes supports the proposition that there can be no vested right in a penalty until it has been reduced to judgment. Commonwealth v. Welch, 2 Dana, 330; Speckert v. City of Louisville, 78 Ky., 287; Pannell v. Louisville Tobacco Warehouse Co., 113 Ky., 630; Standeford v. Wingate, 2 Duvall, 440; Commonwealth v. Spraggins, 18 B. Mon., 512; Williams v. Shelbourne, 102 Ky., 579; C. C. C. & St. Louis Railway Co. v. Wells, 65 Ohio St. Rep., 313; 58 L. R. A., 651; Welch v. Wadsworth, 30 Conn., 149; Dyer v. Ellington, 126 N. C., 941.

In view of what we have said it does not seem necessary to extend this opinion further in discussing the validity of the Act of 1912 or the right of the legislature to enact the sections complained of. We think it proper, however, to add that the revenue agent should not be burdened with the cost of proceedings dismissed under section five of the act. It will be observed that this section provides that when a proceeding is dismissed under it that the defendant shall recover from the revenue agent instituting the suit his costs therein expended. The Act of 1912, although it was approved by the Governor on March 18, 1912, did not go into effect and become a law until June 17, 1912, and the revenue agent was not charged with notice of it until it became operative, and thus he was only allowed thirteen days in which to take such action as would save pending suits coming within the scope of section five of the act from its operation.

While the legislature had the right to enact this legislation and the revenue agent had no contract right that it impaired, it would nevertheless be unjust to burden him with cost without giving him more time than is

allowed by section five to take such action as would save him from this penalty. There is quite a difference between not allowing the revenue agent to prosecute the pending suits to a final judgment and charging him with cost because he had not been as active or vigilant as he might have been.

At the time the suits dismissed under section five were instituted the law provided in section 4260 heretofore quoted that the revenue agent should be liable to the defendant on his official bond for all costs incurred by him in defending the suit if it was adjudged on a final hearing that the property sought to be assessed was not for any reason subject to taxation. It was the evident purpose of this provision to impose upon revenue agents the duty of investigating carefully the facts of each case before bringing suits to assess omitted property for taxation so that taxpayers might not be harrassed and put to unnecessary expense in defense of groundless suits. It was further contemplated that the penalty imposed on the revenue agent if unsuccessful should not be adjudged against him until there had been a hearing of the case upon its merits and it was adjudged upon such hearing that the suits should not have been brought. And so we hold that so much of section five as charges the revenue, agent with cost is not valid or enforceable.

This principle, however, should not be applied to suits dismissed under section six of the Act. Under this section suits instituted between July 1, 1911 and July 1, 1912, or subsequently cannot be dismissed unless the revenue agent has failed to take the steps described in the section "for a period of two terms of court when it is a court having terms, or for a period of ninety juridical days, when it is a court of continuous session," after July 1, 1912. So that in suits brought subsequent to July 1, 1911, and before July 1, 1912, the revenue agent had ample time after the law became effective to take such action as would exempt these suits from the operation of section six, and if he failed to take such action, and because of such failure any suit was dismissed under section six, he should be required to pay the costs as provided in that section.

Coming now to consider each of these cases separately, we find that the suit in the Belknap case was brought in the county court in April, 1911, and was dismissed in that court in May, 1911, and in the same month

appealed to the circuit court by the Commonwealth. In the circuit court no step was taken in the case from May, 1911, until September, 1912, nor was the delay due to any of the causes described in section five. Therefore the suit was properly dismissed in the circuit court.

In the Torbitt case the proceeding was instituted by the revenue agent in the county court in February, 1910. In March, 1910, summons was executed on Torbitt, who died in April, 1910. In June, 1910, an amended petition was filed in the county court against Samuel C. Castleman, his executor. After this no step was taken in the case until September, 1912, when a motion was made in the county court by Castleman, Executor, to dismiss the proceeding, which motion was sustained; thereupon, in October, 1912, the revenue agent prosecuted an appeal to the circuit court, in which court the proceeding was also dismissed. As no step was taken in this case between September, 1910, and September, 1912, it comes clearly within section five of the act, and the judgment of dismissal was proper.

In the National Lead Co. case the statement was filed in the county court in September, 1910, and after some motions and answers had been made the proceeding was, in June, 1911, dismissed in the county court and an appeal prosecuted in the same month to the Jefferson Circuit Court. In the Jefferson Circuit Court no steps were taken in the case until September, 1912, when it was dismissed on motion of counsel for the lead company. Under these facts the case falls within section five of the act, and was properly dismissed.

In the Bishop case a trial was had in the county court in January, 1911, resulting in a judgment holding that property of the value of $18,500 had been omitted from assessment which was subject to taxation. From this judgment the executrix of Bishop appealed to the circuit court in March, 1911. No step was taken in the action in the circuit court until September, 1912, when a motion was made to dismiss, which was sustained in October, 1912. When the appeal was prosecuted by the defendant to the circuit court, the action in the circuit court occupied the same attitude as if it had been an original proceeding instituted in that court, and as no step was taken in the case by the Commonwealth for more than a year prior to July 1, 1912, the case was properly dismissed.

In the American Tobacco Co., case suit was instituted in the county court in February, 1911, and in May, 1912, the suit was dismissed in the county court and an appeal at once taken to the circuit court. No steps were taken in the action in the circuit court from the time the appeal was filed in May, 1912, until September 28, 1912, when a motion was made by the American Tobacco Co. to dismiss the proceedings, and in October, 1912, this motion was sustained.

In the Ewald Iron Co., case the proceeding was instituted in the county court in March, 1911. In May, 1911, the iron company filed an answer, and in the same month a trial was had in the county court, and the proceeding dismissed and an appeal prosecuted to the circuit court. It appears no step was taken in the circuit court until April, 1912, when an amended petition was tendered by the revenue agent, but objection to its filing was sustained. No other motion was made or step taken in the case until September 28, 1912, when the iron company made a motion to dismiss the proceeding, and in October, 1912, it was dismissed.

These two last mentioned cases do not come within the scope of section five of the Act, as in the Tobacco Company case an appeal was taken to the circuit court in May, 1912, and in the Ewald Iron Co., case an amended petition was tendered by the revenue agent in April, 1912; so that affirmative action, other than docketing or remanding it or passing it from time to time, was taken within the year before July 1, 1912. Therefore, these two cases are to be controlled by section six of the Act. This section, as we have heretofore indicated, is only applicable to cases pending on July 1, 1912, or subsequently begun and in which no step, other than docketing, remanding or passing, has been taken by the Commonwealth for a period of ninety juridical days, when the case is pending in a court of continuous session. This section applies to proceedings instituted subsequent to July 1, 1911, and also applies to all proceedings instituted at any time on or after July 1, 1912. In other words, this section was intended to have altogether a prospective and not a retrospective application. It was intended to apply not only to cases brought after July 1, 1911, and before July 1, 1912, but to all cases that may be instituted on or at any time after July 1, 1912.

The purpose of the section was to make revenue

agents diligent in the prosecution of cases. That it was not intended to have a retrospective application or to apply to cases in which no steps had been taken, other than docketing, remanding or passing for more than ninety juridical days prior to July 1, 1912, is, we think, made plain by the fact that if this construction was given to section six, section five would have no meaning at all, and there would have been no reason for the adoption of section five. Evidently the legislature intended that both of these sections should have meaning and effect, and the construction we have given them makes both of them effective. One applies to cases brought before July 1, 1911, in which no step, other than docketing, remanding or passing, was taken between July 1, 1911, and July 1, 1912; the other applies to all cases, brought after July 1, 1911, in which no step, other than docketing, remanding or passing, has been taken for a period of two terms, in courts having terms, or for a period of ninety juridical days in courts having continuous session after July 1, 1912.

Applying this construction of section six to the cases of the American Tobacco Co., and the Ewald Iron Co., we find that no steps were taken in the cases from July 1, 1912, until September 28, 1912, on which date they were set at rules. But these suits were pending in courts of continuous session, and it is admitted that the courts in which these cases were pending adjourned on June 29, 1912, and did not convene again until September, 1912; so that there was no court in session between these dates in which any action could be taken in these cases.

It will be observed that the section uses the words "juridical days." The words "juridical days" mean days that courts are open or in session (Webster's Dictionary), and these words were evidently inserted in the Act for the purpose of exempting from its operation the period of summer and other adjournments when the courts are not open or in session.

We are, therefore, of the opinion that it was error to dismiss the cases against the American Tobacco Co., and the Ewald Iron Co. Wherefore, the judgment of the lower court in the cases against the Belknap Hardware Co., the National Lead Co., Bishop's Executrix, and Torbitt's Executor are affirmed, but the judgments in these cases as to costs will be corrected as indicated. The judgments in the cases against the American Tobacco Co. and the Ewald Iron Co., are reversed.