**BOARD OF EDUCATION OF GRAVES COUNTY, Kentucky, Appellant,**

v.

**James B. DE WEESE, Appellee.**

Court of Appeals of Kentucky.

Dec. 16, 1960.

Dissenting Opinion Jan. 13, 1961.

Rehearing Denied March 24, 1961.

Robbins & Cross, Mayfield, for appellant.

L. M. T. Reed, Martin, Neely & Reed, Mayfield, David R. Reed, Reed & Hines, Paducah, for appellee.

Robert F. Matthews, Jr., Asst. Atty. Gen., for Robert R. Martin, Superintendent of Public Instruction, amicus curiae.

James W. Stites, Louisville, for Kentucky Education Ass'n, and Ky. Association of School Administrators, amicus curiae.

J. T. Hatcher, Elizabethtown, Ky., for Kentucky School Bds. Ass'n, amicus curiae.

Bradley & Bradley, V. A. Bradley, Sr., Georgetown, for Bd. of Trustees of University of Ky., amicus curiae.

Lucian L. Johnson, Louisville, for Bd. of Ed. of Jefferson County, Ky., amicus curiae.

Jo M. Ferguson, Atty. Gen., amicus curiae.

PALMORE, Judge.

This is a declaratory judgment proceeding in which James B. DeWeese seeks recovery of the Graves County Board of Education in the principal amount of $8,000, consisting of salaries as superintendent ($5,250) and secretary ($2,250) from February 1 to November 1, 1957, and expense allowance ($500) from January 1 to November 1, 1957. On the theory that all payments other than the $7,000 per annum salary as superintendent were illegal, the school board counterclaims for $3,300, consisting of $1,500 paid as expense allowance from July 1, 1954, to December 31, 1956, $1,750 paid as secretary's salary from July 1, 1956, to January 31, 1957, and $50 paid as "Secretary Salary—1st Mo." on July 2, 1954. The facts are not in dispute. On the pleadings the trial court adjudged payment to DeWeese of the two salaries but invalidated the expense allowance and sustained the board's counterclaim for the

$1,500 paid on that account. Both parties have appealed, and among the other parties intervening or appearing as *amici curiae* are the Attorney General of Kentucky, the Superintendent of Public Instruction, the Kentucky Educational Association, the Kentucky Association of School Administrators, the Kentucky School Boards' Association, the Jefferson County Board of Education, the Kentucky Municipal League, and the Board of Trustees of the University of Kentucky, the last named institution being vitally affected because the questions relating to § 246 of the Constitution of Kentucky may jeopardize the possibility of staffing its newly established college of medicine.

By a resolution of the Board of Education of Graves County, Kentucky, adopted July 3, 1953, James B. DeWeese was elected as superintendent of schools and secretary of the board for a term of four years beginning July 1, 1954, "with a salary of $7,000 per year for the superintendency and an expense account not to exceed $600 a year for local travel; any time duties requiring leaving Graves County on business that proper reimbursement be paid." On the same day the parties executed a separate contract wherein, after reciting that DeWeese had a contract with the board as school superintendent, it was agreed that he would serve at no salary as secretary of the board for the same 4-year term and would devote all of his time to the performance of his duties in the two capacities. On June 27, 1956, the board again elected DeWeese as its secretary for a term of four years, beginning July 1, 1956, and fixed his salary therefor at $3,000 per annum payable monthly. From July 1, 1954, until January 31, 1957, he was paid his salary as superintendent at the rate of $7,000 per annum, and he was paid the expense allowance of $50 per month until December 31, 1956. From July 1, 1956, until January 31, 1957, he was paid also the secretary's salary of $250 per month. In addition to the foregoing items, it appears that on July 2, 1954, he received an isolated

payment of $50 marked, "Secretary Salary —1st Mo." After January 31, 1957, the school board, controlled by new members, made no further payments to DeWeese, and he continued in service until November 1, 1957.

We may dispose of the cross-appeal at once. KRS 64.710 provides:

"No public officer or employe shall receive or be allowed or paid any lump sum expense allowance, or contingent fund for personal or official expenses, except where such allowance or fund either is expressly provided for by statute or is specifically appropriated by the General Assembly."

■ It is not contended that there is any specific authority for lump sum expense allowances to school superintendents. Although the order of the school board recited that the allowance was "not to exceed" $600 a year, the contemporaneous construction placed on it by the contracting parties as a lump sum allowance was conclusively evidenced by the fact that DeWeese actually was paid a flat $50 per month without itemization and by the further fact that in this proceeding he did not attempt to prove the items of expense. We conclude, as did the circuit court, that the payment of $50 per month was a blanket allowance violating KRS 64.710.

With respect to the $1,800 paid as secretary's salary the school board's position is as follows: A school superintendent is a public officer. Reynolds v. Board of Education of Lexington, 1949, 311 Ky. 458, 224 S.W.2d 442. DeWeese having been elected by the board for a 4-year term, his compensation during that term could not be changed. Const. §§ 161, 235. Beauchamp v. Snider, 1916, 170 Ky. 220, 185 S.W. 868; Board of Education of Boyle County v. McChesney, 1930, 235 Ky. 692, 32 S.W.2d 26. The maximum limits of compensation prescribed by Const. § 246 attach to the *officer* rather than the office (Barker v. Barnes, Ky.1952, 248 S.W.2d 901; Funk

v. Milliken, Ky.1958, 317 S.W.2d 499) and a school superintendent is a local officer limited to a total annual salary of $7,200 from any combination of public positions not involving duties of statewide scope; hence the salary of $3,000 per annum as secretary to the board effectually violated § 246 as well as §§ 161 and 235 of the Constitution.

Against the basic premise of this argument the question arises as to whether a school superintendent is truly an officer within the intendment of Const. §§ 161, 235, and 246, thus inviting a re-examination and review, which we consider to be necessary and timely, of a problem that has troubled this court and vexed the public for well over half a century but has never been satisfactorily resolved.

It has been pointed out in the case of Pardue v. Miller, 1947, 306 Ky. 110, 206 S.W.2d 75 (Judges Sims and Thomas dissenting) that § 246 as it appeared originally in the Constitution applied only to officers, evidently because there seemed then to be no reason for the members of the Convention (who regarded $5,000 as a "munificent" income) to contemplate that the compensation of employees and subordinates would ever become a problem. And so it happened that the early cases centered not upon § 246, but on §§ 161 and 235.

In City of Louisville v. Wilson, 1896, 99 Ky. 598, 599, 36 S.W. 944, 946, 18 Ky.Law Rep. 427, it was held that members of the board of public safety and board of public works of the City of Louisville, the secretary of the board of public works, deputies of the police court, and an assistant bailiff of the police court all were public officers whose salaries could not be increased during their appointed terms. Apprehension that this result might set a mischievous pattern for the future was voiced in a dissenting opinion by Judge Guffy (in which Judge DuRelle concurred) to the effect that the progress of our institutions demanded "that the compensation of all officers not mentioned in the constitution should be at

all times subject to the control of the legislative power that creates the offices and fixes the compensation."

But the precedent was established, and it was not long before the occasion arose to evade without retracting it. In City of Lexington v. Rennick, 1899, 105 Ky. 779, 49 S.W. 787, 50 S.W. 1106, 20 Ky.Law Rep. 1609, 1924, it was held that salaries of police officers (assumed without discussion to be public officers) not holding fixed terms of office may be changed. The distinction is thus stated in Commonwealth v. Ewald Iron Co., 1913, 153 Ky. 116, 154 S.W. 931, 934:

> "These sections [161 and 235] apply to officers having a fixed term during which their compensation cannot be changed, and do not include officers who may be removed at the pleasure of the appointing body."

The same principle was applied in Shanks v. Howes, 1926, 214 Ky. 613, 283 S.W. 966, approving an increase in the compensation of the chief clerk of the House of Representatives, though he was held to be a "public officer." (It is interesting to note that the purpose of this increase was to cover extra help employed by the chief clerk, an indirect maneuver designed to circumvent the injunction of Const. § 249 to the effect that the House shall never elect, appoint, employ or pay for more than one doorkeeper. The House chamber in the old State Capitol had but one door. See Sanders v. Talbott, 1934, 255 Ky. 50, 72 S.W.2d 758, holding that the total amount payable to the chief clerk is subject to the limitation of § 246.)

Meanwhile, in the case of Fox v. Lantrip, 1915, 162 Ky. 178, 172 S.W. 133, following the precedent of City of Louisville v. Wilson, supra, it was held that a county school superintendent was a public officer within the meaning of §§ 161 and 235.

It was not until the 1920's that § 246 began to chafe. In Carroll v. Fullerton, 1926, 215 Ky. 558, 286 S.W. 847, it was held applicable to the city prosecuting attorney of a third class city. In Whittenberg v. City of Louisville, 1931, 238 Ky. 117, 36 S.W.2d 853, it was established that § 246 attaches to the officer as distinguished from the office itself, so that two successive holders of the same office during a single year were not limited to proportionate shares of the constitutional maximum of $5,000. Then came City of Lexington v. Thompson, 1933, 250 Ky. 96, 61 S.W.2d 1092, wherein a city manager was determined to be an officer within the meaning of § 246 despite an express provision to the contrary in the statute creating the position. In an exhaustive opinion by Judge Thomas the court reiterated the policy originally declared in City of Louisville v. Wilson, supra, that for purposes of the constitutional restrictions on compensation the word "officer" should be defined to embrace something more than the offices created or officers named by the constitution itself. The decision laid down broad criteria for the determination of what is a public officer in this general sense.

In City of Louisville v. German, 1941, 286 Ky. 477, 150 S.W.2d 931, 935, the director of finance of the City of Louisville had been given separate compatible employment as chief accountant and financial adviser of the city's Municipal Housing Commission. The combined salaries exceeded $5,000, and this was found to be in violation of Const. § 246. It is clear from the opinion that the situation had now become difficult and that the court was mindful of a current proposal to amend § 246:

> "If the contention of appellants is sound and to be upheld, then the long sought and desired amendment or repeal of Section 246 to remove what is now considered an unwise restraint was a useless gesture, since the end to be accomplished thereby might be attained by indirection and the salary of any and all officials increased by giving them 'employment' in the same or some other department of the government with additional compensation which would raise the combined salaries beyond the

constitutional limit. * * * Section 246 leaves nothing to implication, but in clear, unequivocal terms expresses a purpose and meaning that no public officer, other than the Governor, shall receive compensation for public service in excess of $5,000 whether from one or more than one position."

What the sentence last quoted overlooks, however, is that the constitution nowhere defined the terms "office" and "officer" and, in fact, nowhere indicated they were to carry the same meaning in the various contexts in which they were used. In this respect it cannot be maintained that § 246 left nothing to implication, or that it was clear and unequivocal. On the contrary, it was obscure from the beginning, and the words came to mean what the court chose to say they meant.

Very shortly after the last-mentioned case was decided the definition of "officer" as it had developed under § 246 claimed a rather unique example in the form of the librarian employed by the trustees of the Louisville Free Public Library. Alvey v. Brigham, 1941, 286 Ky. 610, 150 S.W.2d 935, 942, 135 A.L.R. 1024. In reaching this conclusion the court said, inter alia: "After having read a number of decisions touching on the question, pro and con, we find it difficult to point to any one which lays down a fixed and determinative rule whereby a precise criterion might be adopted by this or any other court." Thus thrown aside was the fiction that the meaning of § 246 was clear and unequivocal.

The cases in which the court had struggled with the matter of defining "officers" indicate beyond any doubt that § 246 had never been regarded as applying to anyone else. Otherwise, of course, the definition would have been of no importance. The breaking point came with Talbott v. Public Service Comm., 1942, 291 Ky. 109, 163 S.W. 2d 33, 38, on the eve of the popular vote to adopt or reject a repeal of § 246. Here the court abandoned the tortuous process of distinguishing "officers" from "employes"

and ruled that § 246 applied to both alike. The president and faculty of the University of Kentucky and the state colleges were held to be employees subject to the limit, but the door was left wide for the employment of special services on contract. (A special attorney retained to collect delinquent taxes, for example, could receive more public compensation than the president of the state univeristy.) A vigorous dissenting opinion by Judge Rees, reminiscent of Judge Guffy's previously mentioned dissenting opinion in City of Louisville v. Wilson, 1896, 99 Ky. 598, 599, 36 S. W. 944, 18 Ky. Law Rep. 427, reads in part as follows:

"The subject matter of § 246 is primarily a function of legislation, and the section should not be given such a narrow or strained construction as will prevent the Legislature from meeting responsibilities occasioned by changing conditions of society so far as that is possible within the limitations expressly imposed. Today states and their subdivisions engage in manifold activities of which the most farsighted statesmen of fifty years ago had not the slightest conception. Many of these activities, though proper and necessary under modern conditions, are far removed from what were deemed governmental functions and 'official duties' when our Constitution was adopted. * * * When they referred to 'public officers' and 'official duties' they did not have in mind school teachers, librarians, accountants, architects, engineers, and others skilled in the professions. They intended the section to apply to public officers performing the customary executive, legislative, and judicial functions of government. So long as the section remains in the Constitution it should be strictly enforced, but it should be confined to public officers performing official duties and we should not declare at this late day for the first time that it was intended to include employees. In construing a

constitutional provision courts are limited to the language used and are controlled by what the framers of the instrument said and not by what they might have meant to say. Where a constitutional provision is free from all ambiguity there is not room for interpretation or addition. It must be accepted by the courts as it reads. If the framers of our Constitution had any thought that mere employees should be affected by the limitations in § 246, nothing would have been simpler than so to phrase the section as to exclude implication or speculation. I think § 246 should be construed to mean exactly what it says, and should not be extended beyond the clear implication of the language employed."

We shall not speculate as to the influence of the impending vote on repeal of § 246 in the deliberations culminating in the Talbott decision. The amendment proposed by the legislature in 1942 to repeal § 246 was approved in Hatcher v. Meredith, 1943, 295 Ky. 194, 173 S.W.2d 665. It is now a matter of history that the amendment was defeated, and when the smoke of battle cleared the tide began to turn in the decisions of the court. The Talbott decision was overruled by a 4 to 3 decision in Pardue v. Miller, 1947, 306 Ky. 110, 206 S.W.2d 75, 76, following the rationale of the dissenting opinion filed by Judge Rees in the Talbott case. Its importance in the analysis of the matter now in question persuades us to quote the following excerpts from the Pardue opinion:

"The court thought it was inconceivable that the members of the Constitutional Convention intended to place a limitation upon the compensation of officers, on whom rest the greater responsibilities, and not upon subordinates. The able members did not visualize the enormous change in economic conditions. They could not anticipate the present worth of technical, professional and administrative serv-ices, or the competition for such services not only with private industry but with public institutions outside Kentucky. They did not foresee that one holding other than an office of the highest degree or class would under future standards of value and compensation demand or deserve more than $5,000 per year. At that time the only officer being paid $5,000 (referred to as 'munificent' in the Debates) was the Governor of the Commonwealth; * * *

"Conceptions based upon the economics of that day do not fit the economics of this day.

"Put surmise out of the case. The stubborn fact remains that the language of the provision does not include employes. * * * As in the construction of statutes, the courts often search for an intention respecting a given fact or condition when in truth the members of the legislature, or, as in this case, the framers of the constitution and the people adopting it, never had any intention concerning that fact or condition. In this instance they never contemplated that it would be necessary to consider the application of this section to public employes, for the current standards of their compensation was [sic] too low. The framers just never thought about that. We ought not to attribute an intention when there was none, as, for example, concerning airplanes, automobiles, radios and many other familiar things of today. Perhaps had present conditions been foreseen, public servants of the employe class would have been included with those having the dignity and designation of officers. Perhaps also the limitation of compensation would never have been placed so low that in process of time it would come to stifle progress and impede the public welfare. This is particularly true in the operation of the University of the state where the present demand for professional serv-

ices and the merit of adequate compensation are so great. The inability to meet the competition with public and private educational institutions of other states has impaired the efficiency of our university, as is conceded by all parties. Indeed, the record shows that this limitation has wrought havoc with the faculty. * * * An intention expressed or fairly to be inferred we are to respect and preserve, to be sure. But the court ought not to press too rigid an interpretation or application of a provision in which the intention is unclear or may only be surmised where it threatens public welfare under changed conditions unforeseen."

Following the Pardue case, it was held in Schranz v. Board of Education of City of Louisville, 1948, 307 Ky. 590, 211 S.W. 2d 861, that principals and supervisors employed by a school board are employes, and not officers, and in Nichols v. Marks, 1948, 308 Ky. 863, 215 S.W.2d 1000, 1003 (Judges Sims and Thomas dissenting) that the health officer of the Lexington-Fayette Board of Health likewise is not an officer, but an employe. Though said with disapproval, in his dissenting opinion in the latter case Judge Sims noted: "It may come to pass at no too distant date that this Court will in one bold stroke say all persons rendering public service, except elective officers, are employes." Hindsight tells us that such an approach, taken in the beginning, might have been the right and best answer.

The membership of the court remained divided in Reynolds v. Board of Education of Lexington, 1949, 311 Ky. 458, 224 S.W.2d 442, where by another 4 to 3 decision it was held that the superintendent and assistant superintendent for business affairs of the city schools of Lexington are public officers under § 246. In a still later case, Love v. Duncan, Ky.1953, 256 S.W.2d 498, 501, the official stenographic reporters of the Jefferson Circuit Court (then appointive to 4-year terms) were declared to be public officers subject to the limitation of §§ 161 and 235, with the result that in 1954 KRS 28.410 was amended to make reporters removable at pleasure. See Curtis v. Van Arsdale, Ky.1955, 277 S.W.2d 19, 20.

Prior to its amendment in 1949, it had been expressly determined by the Pardue case, supra, that § 246 did not apply to employes. In 1948 the General Assembly proposed an amendment which may well have been intended to apply to employes as well as officers, but which the Attorney General conceived to be so ambiguous in that respect as to have no meaning, with the result that he drafted the question to be placed on the ballot for the November, 1949, general election in the following form:

"Shall Section 246 of the Constitution of Kentucky be so amended as to limit the annual compensation hereafter payable to public *officers,* other than the Governor, including those now in office, to the following amounts. * * *." etc. (Emphasis added.)

In a suit filed immediately thereafter to prevent submission of the question to the voters in that form, for the reason that it did not include public employes, this court in a unanimous decision agreed with the Attorney General and approved the form in which he had drafted and certified the question to the Secretary of State. Smith v. Hatcher, 1949, 311 Ky. 386, 223 S.W.2d 182. On November 8, 1949, the amendment as it appeared on the ballot was ratified by popular vote.

█ From this simple recitation of the facts it is clear to the majority of the court that the question referred to the electorate in 1949 did not embrace "employes" and that § 246 therefore cannot and does not affect employes. Whether the decision in Smith v. Hatcher was right or wrong is no longer material, because it must be presumed that the ratifying vote following immediately thereafter was based upon it

and therefore cured any question as to its soundness. It follows, then, that the words, "or employe," as they appear in § 246 of the Constitution are (as held in Smith v. Hatcher) without legal effect. Hence Pardue v. Miller, supra, continues to be the law.

We have reviewed here enough of the principal cases bearing on §§ 161, 235 and 246 of the constitution to make it clear that the early decisions of the court, following adoption of the present constitution, to extend the definition of "officers" beyond those named in the constitution itself have resulted in protracted frustration and confusion. The situation becomes even more perplexing when we consider some of the decisions defining "officers" for other purposes. See, for example, Page v. O'Sullivan, 1914, 159 Ky. 703, 169 S.W. 542 (prison guard); Waddle v. Hughes, 1935, 260 Ky. 269, 84 S.W.2d 75 (U.S. mail carrier held ineligible to school board); Taylor v. Com., 1947, 305 Ky. 75, 202 S.W.2d 992 (manager of State Fair Board); Howard v. Saylor, 1947, 305 Ky. 504, 204 S.W.2d 815 (auditor employed by fiscal court); and Bernard v. Humble, 1944, 298 Ky. 74, 182 S.W.2d 24 (school attendance officer).

It may be seen from this review that over the years, in the absence of a clear definition in the constitution itself, the court has experimented with the meaning of §§ 161, 235 and 246. A tendency to construe the word "officers" so broadly as to include every position of public service sufficiently important to raise the pay problem began to assume the appearance of a ridiculous sham, a circumstance the court must have recognized in the Talbott case when it did away with artificial distinctions. This was the high water mark in the history of § 246, wherein it was held to engulf all positions of public service, employés as well as officers. If it was hoped the situation might dramatize the need for an amendment or repeal the hope was fruitless, as the move was defeated the next year. At any rate,

the ebb tide began with Pardue v. Miller, which had the effect of releasing employes from the restriction. In view of Smith v. Hatcher the 1949 amendment produced no change in this respect. Therefore, the old problem of distinguishing between officers and employes has survived to this day, and again, as in the Talbott case, the court finds itself reluctant to continue dealing in vague and artificial distinctions.

The majority of the court do not believe, however, that the answer to the problem is the way taken in the Talbott case. As pointed out in Pardue v. Miller, the constitution did not in the first instance limit the compensation of anyone but officers; and in view of the manner in which the 1949 amendment to § 246 was construed and submitted to a popular vote, neither did the public at that time impose such a restriction. Therefore, we do not conceive that there is either an obligation or any good reason for the court now to imply such a limitation.

█ Where it is possible, the constitution should be construed liberally, that it may continue as a useful instrument in the life of our society. Doubtful questions ought to be resolved in favor of the freedom of the living generation to govern its own affairs in the light of modern circumstances. We believe that the people of this state are fully competent to impose, through their elected representatives in the General Assembly, whatever salary restrictions may have been left open by the constitution; and, indeed, to a very comprehensive extent they have done so in KRS 64.480–64.760.

█ The difficulties experienced in defining "officers" are attributable to the court's determination to extend the term beyond the officers named in the constitution. The misgivings expressed in 1896 by Judge Guffy's dissenting opinion in City of Louisville v. Wilson, supra, proved to be well-founded. The term became a creature of the court, not of the constitution itself, resulting in an era of ambiguity and

evasion. In the circumstances, a re-examination and reconsideration of the subject are well within the legitimate scope of the judicial process, and we have concluded that the meaning of the word "officers" as it is used in Const. §§ 161, 235 and 246 should be restricted to the officers directly named and designated in the text of the constitution. To the extent that prior decisions of this court are inconsistent with this conception they shall no longer be authoritative.

One final word in passing to the conclusion of this opinion. It may be said (and was said in the Talbott opinion) that it is absurd to think that the service of public officers should be held so lightly as to be subject to limitations where none apply to subordinates. Not so. The following excerpt appears in Metcalf v. Howard, 1947, 304 Ky. 498, 201 S.W.2d 197, 202:

> "Some men are willing to serve in public office as a contribution to government or for the honor or distinction where the monetary consideration is absent or negligible. Other men serve for power and prestige."

█ It might have been appropriate to add also that some men achieve inner fulfillment in the kind of service the office permits them to perform. Constitutional office has always been held a high privilege in this state. It brings reward in the way of honor and personal satisfaction beyond the crass measure of money. The public trust demands that money must not be a prime object in seeking it. On the other hand, while the compensation attaching to a public office should never be so comfortable as to attract opportunists, when economic conditions reduce its value to the point that qualified men and women without independent means cannot afford to offer their services there must be an adjustment. It requires no flight of fancy for us to take judicial notice that such an adjustment, through an amendment or repeal of Const. § 246, is an urgent require-

ment of the present day. Perhaps the easing effect of this opinion upon all but constitutional officers will retard the realization of such an adjustment. That would be regrettable. But our function is to interpret the constitution as a living instrument, not as a lever on the public. What the people choose to do in order to preserve the dignity and vitality of constitutional office in this state is addressed to their conscience and common sense, freely exercised.

█ From what we have said, it results that DeWeese is not an officer within the meaning of Const. §§ 161, 235 and 246, since the office of superintendent is a creature of statute (KRS 160.350) and is not named in the constitution. KRS 64.600 declares that for the purpose of KRS 64.480 and 64.760 officers and employes of school districts are deemed to be officers and employes of the state. Hence the $7,200 statutory limit imposed by KRS 64.620 on officers and employes of local governmental units does not apply, and the addition of the $3,000 secretarial salary to his compensation as superintendent was within the authority of the school board. We find no basis to support appellant's contention that the latter amount exceeds a "reasonable" salary as authorized by KRS 160.440. Therefore, the judgment of the circuit court permitting him to retain the $1,800 received on that account was correct.

The judgment is affirmed on both the appeal and cross-appeal.

MILLIKEN, J., BIRD, C. J., and MONTGOMERY, J., dissent.

MILLIKEN, Judge (dissenting in part).

The majority opinion is an excellent summary of the running battle within the Court for six decades over the application of the various salary limitation provisions of the State Constitution. The recurrence of the trouble over so many years, so often reflected in opinions by a divided Court, indicates rather clearly that any decision reached on

the question at a given time is a short-lived affair and settles nothing for very long. Each attempt by the Court, as here, however well intended, to accommodate to a difficult situation caused by an outmoded provision of the Constitution again defers the need for public understanding of the problem.

"No public officer or employe except the Governor shall receive as compensation per annum for official services," various amounts specified, says the Constitution. The word "employe" was inserted in 1948 by express intention of the Legislature, and it is in the Constitution now by vote of the people. It is significant that the insertion of the word "employe" into the Constitution followed, and was caused by, the 1947 decision of a divided Court in Pardue v. Miller, 306 Ky. 110, 206 S.W.2d 75, 79, freeing university professors and other State employes from the salary limitations of the Constitution which, at that time, did not include the word "employe" in the provision. The obvious purpose of this provision of the Constitution (Sec. 246) is to protect the public treasury from immoderate salary increases (Talbott v. Public Service Commission, 1942, 291 Ky. 109, 163 S.W.2d 33), a purpose which potentially could be almost completely thwarted as a consequence of the conclusion of the majority. While I am confident the General Assembly would act moderately in granting salary increases in these days of fluctuating values even if it were free of all constitutional salary limitations, nevertheless, so long as the provision remains in the Constitution its purpose should be observed.

I would be delighted to relieve university and college professors, statutory officers and employes from the oppressively restrictive salary provisions of the Constitution if I could concur in the present interpretation by the majority. I cannot concur, because I cannot ignore the presence of the word "employe" in the provision and the reason for its being there.

MONTGOMERY, Judge (dissenting).

I am hesitant to write this dissenting opinion. Too much has been written and said concerning this case, so much that I feel that the real question should be stated again, briefly, in the interest of clarity. The main point in the litigation is obscured in the majority opinion by the discussion of Kentucky Constitution Sections 161 and 235 and a definition of "public officer."

This action started when James B. DeWeese sued the Graves County Board of Education to recover money he claimed to be due him for his services as superintendent and secretary. The question as to whether DeWeese was entitled to collect for such services more than $7,200 per annum was presented in an affidavit filed by the Board in opposition to DeWeese's motion for a summary judgment. It was presented specifically by the following statement in the affidavit: " * * * if said Board is correct in its position that the plaintiff was not legally entitled to payment of said funds or that he is limited to payment of not more than $7,200 per year under the Kentucky Constitution then said Board is entitled to have a credit by the total amount of such unlawful payments against the plaintiff's claim for salary as school superintendent, thereby reducing substantially the amount of plaintiff's claim."

To settle once and for all certain statements and claims made by various interested parties that the question of the salary limitation imposed by Kentucky Constitution Section 246 was never in this case, reference is made to pages 10 and 11 of the appellant's original brief and to page 10 of the appellee's original brief wherein it is discussed. Thus, the question as to whether DeWeese's compensation was limited to $7,200 by Kentucky Constitution Section 246 was squarely presented. In the original majority opinion, withdrawn after reconsideration, the issue was met face to face and it was decided that the

limitation did apply. The later majority opinion follows the pattern of writing around the plain language of the Constitution set in Pardue v. Miller, 306 Ky. 110, 206 S.W.2d 75.

The pertinent part of Kentucky Constitution Section 246 follows:

"No public officer or employe except the Governor, shall receive as compensation per annum for official services, * * * any amount in excess of the following sums: Officers whose jurisdiction or duties are coextensive with the Commonwealth, * * * Twelve Thousand Dollars; * * * all other public officers, Seven Thousand Two Hundred Dollars. * * *."

This is the language of Section 246 as amended by a vote of the people in November 1949, effective March 6, 1950. Formerly, the pertinent part of Section 246 read as follows:

"No public officer, except the governor, shall receive more than five thousand dollars ($5,000.00) per annum as compensation for official services, * * *."

The meaning of this section of the Constitution was construed in 1942 in Talbott v. Public Service Commission, 291 Ky. 109, 163 S.W.2d 33, 34, with Rees, J., dissenting in part and Cammack, J., not sitting.

In holding that Section 246 applied to officers and employees, including "the president and professors of the University of Kentucky and the Teachers' Colleges," alike, the reasoning of the Court was:

"It seems to us to be inconceivable that the members of the constitutional convention would feel impressed with the obligation to limit salaries of those engaged in the performance of duties of grave responsibility, and, at the same time, permit persons in positions subordinate in authority and responsibility to receive unlimited compensation. To attribute to them such inten-

tion would be to charge them with a total absence of appreciation or sense of values and would amount to an accusation that they proceeded on an absurd hypothesis. Such interpretation would be to hold that the Constitution forbids officers, upon whom rests the responsibility of approving the expenditure of millions of dollars a year, from receiving as much salary as may be paid to mere messenger boys in the departments such officers direct. That such construction would result in an absurdity does not require reflection, it is apparent on its face. We therefore conclude that section 246 of the Constitution is not limited in its application to that class of employees of the state who are technically known as officers, but that common sense dictates that the word 'officers' must be construed to include, by inference, employees subordinate thereto."

In the dissenting opinion in the Pardue case, in which Judge Thomas joined, Chief Justice Sims said:

"The logic of the above quotation is irrefutable. It stands out as a lighthouse on a rocky reef to show, those who would use the Constitution as a compass, a course by which to bring our Ship of State safely into port in stormy weather." [306 Ky. 110, 206 S.W.2d 79].

The logic of the reasoning in the Talbott case is no less irrefutable today. It is interesting to note that no subsequent decision or opinion has pointed out any fallacy in this reasoning.

The decision in the Pardue case overruling the Talbott case was based on the fallacious reasoning that the failure of the framers of the Constitution to include the word "employees" in the language of the salary limitation provision indicated an intent to exclude employees. Then, the Pardue opinion pointed out the "enormous change in economic conditions" and the "havoc" that would be wrought unless re-

lief was given. This has a very familiar ring and is incorporated in the majority opinion in this case.

The following comment by Chief Justice Sims in his dissent is equally applicable to the Pardue decision and the majority opinion here, to-wit:

> "The opinion of the majority gives most excellent reasons why § 246 should be amended, with which I am heartily in accord, and then it proceeds to amend our Constitution. This a court has no authority to do. Especially is this true in face of the fact that the amendment of this very section has been submitted to the voters three or four times within the last two decades and has been overwhelmingly defeated each time. The last efforts to remove this salary limitation by amendment was defeated by the electorate in 1943."

Again, efforts to gain relief from the salary limitation by amendment were defeated by the electorate in the November 1960 election. Again, the comment of Chief Justice Sims is especially applicable when he wrote:

> "It is my thought that § 246 should be amended by a vote of the people and not by judicial interpretation."

The majority opinion bases its holding that Section 246 does not apply to employees on Smith v. Hatcher, 311 Ky. 386, 223 S.W.2d 182. This is done despite the inclusion of the word "employee" in the Act authorizing the vote on the amendment, Acts 1948, c. 172. This presents an oddity since in the Pardue case the same result was reached because the word "employees" was not included. One is led to wonder how employees might be made subject to the salary limitation with two such decisions.

In Smith v. Hatcher, the Court had before it the single question of whether there was any significance in the phrase "or employee" which appeared in the Act and the amendment. The Court held simply that it had no significance and it was not necessary to the question submitted to the electorate. No mention was made of the Talbott and Pardue cases or of the two distinct contrary lines of reasoning contained therein. No decision was made in Smith v. Hatcher as to whether the salary limitation in Section 246 did or did not apply to employees. Those who sought to avoid the salary limitation in the Constitution seized on this decision as meaning that employees were not subject to the salary limitation when, in fact, under the irrefutable logic of the Talbott opinion, and I am sure under the reasoning of the average citizen, there was no significance to the phrase "or employee" because it would have been reasoned that the limit for officers would impliedly be the limit for employees serving thereunder. It is apparent that Chief Justice Sims and Judge Thomas, both of whom were still on the Court, applied this reasoning and considered that any limit on the officer would also be a limit on the employee. Neither dissented in the Smith case although both had dissented on the same grounds nine months previously when the question of salary limitation was presented in Nichols v. Marks, 308 Ky. 863, 215 S.W. 2d 1000, 1003. Chief Justice Sims, in his dissent in that case, may have unwittingly suggested, perhaps sarcastically, the basis for the majority opinion here when he wrote:

> "It occurs to me that it will not be long before we have a dearth of officers and a plethora of employees serving in this Commonwealth should this Court continue to circumvent Section 246. It may come to pass at no too distant date that this Court will in one bold stroke say all persons rendering public service, except elective officers, are employees."

Under such circumstances, it cannot be suggested or imagined that Judges Sims and Thomas did an about-face in their views in Smith v. Hatcher. Those who knew those eminent jurists know that they

felt that the Smith v. Hatcher decision was in harmony with the reasoning in the Talbott case or there would have been a third dissent.

Thus, when the question arose whether the constitutional salary limitation applied to James B. DeWeese as superintendent and secretary of the Graves County Board of Education, the Court, as then composed, after long deliberation and careful consideration met the question squarely by a four to three vote, followed the reasoning herein outlined, and held that the limitation applied to officers and employees alike. A change in Court personnel has resulted in a four to three vote in favor of the present majority opinion. As long as there is more than one judge on a court, there may be a difference in opinion as to what the law is. Five years after the Talbott decision there was a difference in opinion expressed in the Pardue case. The majority opinion in the present case represents a difference in opinion in a much shorter period of time. No one can foresee the future and say what changes may come in personnel which might result in another change in opinion on this subject.

The ill effects of the majority opinion are very far-reaching. The many prior decisions of this Court, without being named, decided over the years since 1892, defining the word "officers" as used in many places in the Constitution, are cast aside as being no longer authoritative, without the dignity of being expressly overruled. It will be many years before this area of the law receives the clarity enjoyed prior to the rendition of the majority opinion.

The majority opinion says that the function of this Court is "to interpret the constitution as a living instrument." No authority is cited for this statement. Is the meaning of the Constitution then to be tossed thither and yon by each passing waft of desperate exigency or demanding expediency? The following quotation from the opinion in City of Louisville v. German,

286 Ky. 477, 150 S.W.2d 931, 935, is still pertinent:

"We fully realize that the limitation fixed by section 246 of the constitution, which was possibly wise and suited to existing conditions at the time of its adoption, has by reason of changed economic conditions, increased governmental activities and exactions of public position, become onerous, tending to impede progress and efficiency and discouraging many competent and qualified persons to seek public office because of allurements of more lucrative fields. However, the court may not shape its course by the exigencies of the situation but must give such effect to the plain, unambiguous terms of the section as will carry out its manifest purpose regardless of the result. The power to amend or repeal the constitution is not with the court but is reposed in the people who adopted it."

Judge Rees wrote in City of Louisville v. Presbyterian Orphans Home Society, 299 Ky. 566, 186 S.W.2d 194, 200, in answering the argument that a change of economic conditions and of social outlook warrant a change of constitutional interpretation:

"The meaning of a constitutional provision does not change. It means now what it meant when it was adopted, and the public policy declared may not be changed by the Legislature or the courts but only by formal amendment."

The living and breathing theory of constitutional interpretation was denounced in the Presbyterian case.

The most devastating effect of the majority opinion has been expressed thus: "Law becomes what the court thinks is best and convenient and the people be hanged." This conclusion was prompted by the action of the Court taken in little over a month after the people had said by their vote that no change in the Constitution was desired despite the fact that revision of the salary

limitation provision was proposed to be made.

I hasten to apologize for the length of this opinion, but it is felt that the possible ill effects of the majority opinion should be pointed out. Constitutional revision and reform may be much needed and desired but should come by the appropriate constitutional methods instead of through usurpation by the judiciary of the legislative function and democratic processes. Stability of democratic government demands it.

BIRD, C. J., and MILLIKEN, J., concur.